UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PALANTIR TECHNOLOGIES INC., <br><br> Plaintiff, <br><br> v. <br><br> RADHA JAIN and JOANNA COHEN, <br><br> Defendants. | Civil Action No. __25-cv-8985____ |

### DECLARATION OF ANNA WENDT

I, Anna Wendt, state and declare as follows:

1. My name is Anna Wendt, and I submit this declaration in support of Palantir Technologies Inc.'s ("Palantir") request for a temporary restraining order and preliminary injunction. I have personal knowledge of the matters set forth herein, based on my personal experience, and if called to testify as a witness, I could and would testify competently thereto.

2. I joined Palantir in October 2022. Today I serve as an Information Security Engineer on Palantir's Security team. Palantir's Security team is responsible for all aspects of Palantir's information technology and security.

3. I hold relevant industry certifications, including the SANS GCFA and a Bachelor's Degree in Computer and Information Systems Security. These certifications reflect the importance to me and to Palantir of operating at the cutting edge of information technology and security. Information security is critically important at Palantir.

4. Palantir is highly protective of its trade secrets and confidential information and goes to great lengths to protect them from unauthorized access, use, or disclosure. Palantir's trade secrets and confidential information are only shared within the company on a need-to-know basis.

5.  Palantir also deploys numerous information security protection measures to ensure its data is protected from a systems perspective, including by implementing various policies regarding how our employees access and handle confidential and proprietary information, as well as sophisticated technological security applications.

6.  In addition, Palantir maintains robust internal policies and procedures that instruct employees on appropriately using and safeguarding Palantir's trade secrets and confidential information, and which include restrictions on employees' abilities to access Palantir's trade secret and confidential information.  For example, Palantir maintains a policy concerning the transfer of files from Palantir's systems to personal devices, which explicitly states that employees "may NOT transfer any Palantir intellectual property" to themselves, which "includes source code, presentations, videos, documents, work products, notes or photos containing Palantir data, exports from knowledge repositories" and similar materials.  Palantir employees must certify that they have read and understand these policies.  In addition, Palantir imposes electronic safeguards to protect and limit access to its trade secrets and confidential information, including network passwords, network monitoring, encryption, access control, and file control software.

7.  Palantir also requires its employees to enter into confidentiality and return of property agreements before joining the company to protect its trade secrets and confidential information and to ensure Palantir's proprietary information is not misused.

8.  I was asked by Palantir to review IT logs and materials related to a former employee, Joanna Cohen, including logs collected by Palantir Security from a messaging platform, Slack, detailing Ms. Cohen's activity surrounding her departure from Palantir, and which Palantir collected in the ordinary course of business.

9.  Slack is an instant messaging communication platform that enables users to

share messages, data, and documents. Palantir employees use Slack for intra-company communications. Much the same way a person can email themselves a message or attachment, Slack users are able to send Slack messages to their own user accounts. This functionality permits a user to access messages, data, and documents at a later time and on any device where the user can log into their Slack account with their Palantir credentials.

10. The Slack logs I reviewed reflect that, between February 24, 2025 at 9:10 pm ET—the day she gave notice of her resignation from Palantir—and February 25, 2025 at 11:20pm ET, Ms. Cohen downloaded several Palantir documents from her Slack account to an iPhone running iOS 18.3.1—in violation of Palantir's policy against transferring Palantir documents to personal devices, as referenced above.

11. Given my role at Palantir managing information security, my team has the technical ability to access the Slack communications of Palantir employees. Once we became aware that Ms. Cohen sent herself several documents shortly after giving notice, I retrieved Ms. Cohen's Slack activity and copies of the documents she sent to herself through Slack.

12. These documents, which contain Palantir's confidential and proprietary information, and which are described in greater detail in the accompanying declaration of Shawn Greenspan, are the following:

- **"Screenshot 2024-04-18 at 12.24.04â€¯PM.png"**[1] *(Healthcare Revenue Cycle Management Diagram);*

- **"Member 360 (1).png"** *(Internal Healthcare Demonstration Planning Framework)*;

- **"Statement of Work – Dx Suspecting Smart Suspects_Draft1.docx"** *(Draft Statement of Work)*

---

[1] A file name beginning with "screenshot" generally reflects that the user took a screen capture of the relevant file from her computer, instead of using the original native file.

13. In the course of my team's investigation, we also reviewed Ms. Cohen's network activity in Palantir's Highspot repository, which is a database of Palantir's confidential and proprietary marketing materials and customer presentations. Access to this repository is gated to full time employees ("FTEs"), with as-needed exceptions granted to non-FTEs.

14. I reviewed Ms. Cohen's Highspot logs from the last four months of her employment, which revealed an unusual pattern of activity in the days leading up to her departure. Her activity in the three-day window surrounding her notice of resignation accounted for over 50% of her entire activity over that four-month window.  More specifically, Cohen's access spiked right after she gave notice, accessing 62 items in a single day—more than she had accessed in the entire preceding fourth month period—and many having no connection to her work in the healthcare industry.  Specifically, she accessed Highspot once on February 24 at 11:11pm UTC, 57 times on February 25 between 6:55pm UTC and 11:58pm UTC, and 4 times on February 26 between 3:21am UTC and 3:24am UTC.[2]

15. The documents Ms. Cohen accessed in Palantir's Highpoint repository after giving notice of her resignation included proprietary Palantir materials, including materials concerning Palantir's anti-money laundering, biomanufacturing, and oil and gas offerings, many of which were specifically marked "for internal use only." I understand that these materials contain proprietary Palantir strategy information concerning various industries, most of which are wholly unrelated to Ms. Cohen's role in the healthcare space.

16. My team's investigation also revealed, that in the weeks leading up to her departure, Ms. Cohen accessed and reviewed information within Palantir's Github instance—the

---

[2] While Palantir's Highspot reports only reflect activity time in UTC, I understand Ms. Cohen was based in New York at the time of the activity, and as such, 61 of the 62 post-notice instances would have occurred on February 25, 2025.

central repository for Palantir's source code. Access to this repository is controlled and tracked due to its strategic value. My understanding is that Ms. Cohen accessed Github with respect to a project that did not fall within her duties and responsibilities. Specifically, Ms. Cohen searched through the source code and related Github materials, where she viewed the names and contact information for Palantir's healthcare customers.

17. I declare under penalty of perjury that the foregoing is true and correct.

Dated: October 29, 2025
Ann Arbor, Michigan

By: _____
Anna Wendt