# EXHIBIT B

**Palantir**

# EXHIBIT A

## PROPRIETARY INFORMATION AND INVENTIONS AGREEMENT

The following confirms and memorializes the Proprietary Information and Inventions Agreement (this "**Agreement**") that Palantir Technologies Inc., a Delaware corporation (the "**Company**") and  Radha Jain  ("**me**" or "**I**") have had since the commencement of my employment with the Company in any capacity and that is and has been a material part of the consideration for my employment by the Company. In this Agreement "**Group**" means the Company and any of its subsidiaries worldwide.

1. No Conflicting Obligations. I have not entered into, and I agree I will not enter into, any agreement either written or oral in conflict with this Agreement or my employment with the Company. I will not violate any agreement with or rights of any third party or, except as expressly authorized by the Company in writing hereafter, use or disclose my own or any third party's confidential information or intellectual property when acting within the scope of my employment or otherwise on behalf of the Company and/or Group. Further, I have not retained anything containing any confidential information of a prior employer or other third party, whether or not created by me.

2. Ownership. The Company shall own all rights, title and interest (including patent rights, copyrights, trade secret rights, mask work rights, sui generis database rights and all other intellectual and industrial property rights of any sort throughout the world) relating to any and all inventions (whether or not patentable), works of authorship, mask works, designs, know-how, ideas and information made or conceived or reduced to practice, in whole or in part, by me during the my employment with the Company (collectively "**Inventions**"); except for those inventions that, to the extent California law applies and in that case as interpreted by California law, (a) were developed entirely on my own time without using the Company's equipment, supplies, facilities, or trade secret information, (b) do not relate at the time of conception or reduction to practice of the Invention to the Company's business, or actual or demonstrably anticipated research or development of the Company, and (c) do not result from any work performed by me for the Company. With respect to employees with a Home State (as defined below) in California, the foregoing sentence shall be interpreted and enforced only to the fullest extent allowed by California Labor Code Section 2870 (which is attached as Appendix A). I will promptly disclose all Inventions to the Company, and, to the extent allowed by applicable law, I will also disclose anything I believe is excluded so the Company can make an independent assessment. I hereby make all assignments necessary to accomplish the foregoing. I shall further assist the Company, at the Company's expense, to further evidence, record and perfect such assignments, and to perfect, obtain, maintain, enforce, and defend any rights specified to be so owned or assigned. I hereby irrevocably designate and appoint the Company as my agent and attorney-in-fact, coupled with an interest and with full power of substitution, to act for and on my behalf to execute and file any document and to do all other lawfully permitted acts to further the purposes of the foregoing with the same legal force and effect as if executed by me. If I wish to clarify that something created by me prior to my employment that relates to the Company's actual or proposed business is not within the scope of the foregoing assignment, I have listed it on Appendix B in a manner that does not violate any third party rights. Without limiting Section 1 of this Agreement, or the Company's other rights and remedies, if, when acting within the scope of my employment or otherwise on behalf of the Company, I use or

1

(except pursuant to this Section 2 of this Agreement) disclose my own or any third party's confidential information or intellectual property (or if any Invention cannot be fully made, used, reproduced, distributed and otherwise exploited without using or violating the foregoing), the Company will have and I hereby grant to the Company a perpetual, irrevocable, worldwide royalty-free, non-exclusive, sublicensable right and license to exploit and exercise all such confidential information and intellectual property rights.

3. Moral Rights. To the extent allowed by applicable law, Section 2 of this Agreement includes all rights of paternity, integrity, disclosure and withdrawal and any other rights that may be known as or referred to as "moral rights," "artist's rights," "droit moral," or the like (collectively "**Moral Rights**"). To the extent I retain any such Moral Rights under applicable law, I hereby ratify and consent to any action that may be taken with respect to such Moral Rights by or authorized by the Company and agree not to assert any Moral Rights with respect thereto. I will confirm any such ratifications, consents and agreements from time to time as requested by the Company.

4. Proprietary Information. I agree that all Inventions and all other business, technical and financial information (including, without limitation, the identity of and information relating to customers or employees, price lists, pricing structures, marketing and sales information, business plans or dealings, designs, formulae or research activities) I develop, learn or obtain during my employment that relate to the Company and/or the Group, or the business or demonstrably anticipated business of the Company and/or the Group or that are received by or for the Company and/or the Group in confidence, constitute "**Proprietary Information**." I will hold in confidence and not disclose or, except within the scope of my employment, use any Proprietary Information. However, I shall not be obligated under this Section 4 with respect to information I can document is or becomes readily publicly available without restriction through no fault of mine. Upon termination of my employment or when requested by the Company, I will promptly return to the Company all items containing or embodying Proprietary Information (including all copies), except that I may keep my personal copies of (i) my compensation records, (ii) materials received solely in my capacity as a shareholder or optionholder of the Company (if then applicable), and (iii) this Agreement. I also recognize and agree that I have no expectation of privacy with respect to the Company's telecommunications, networking or information processing systems (including, without limitation, stored computer files, email messages and voice messages) and that my activity and any files or messages on or using any of those systems may be monitored at any time without notice.

5. Non-Competition During Employment. I agree that during the course of my employment, I will not, in the same or materially similar capacity as I work for the Company, without the prior written consent of the Company, whether paid or not: (i) serve as a partner, principal, licensor, licensee, employee, consultant, officer, director, manager, agent, affiliate, representative, advisor, promoter, associate, investor, or otherwise for, (ii) directly or indirectly, own, purchase, organize or take preparatory steps for the organization of, or (iii) build, design, finance, acquire, lease, operate, manage, control, invest in, work or consult for or otherwise join, participate in or affiliate myself with, any business whose business, products or operations are in any respect competitive with the Company's and/or Group's business. Should I obtain other, non-competitive employment during my employment with the Company, I agree to provide written notification to the Company as to the name and address of my new employer, the position that I expect to hold, and a general description of my duties and responsibilities, at least three (3) business days prior to starting such employment.

6. Restrictive Covenants.

     6.1  *Customer and Third Party Non-Solicitation*

      (a) I agree that for a period of twenty-four (24) months immediately following the termination of my employment with the Company, whether I resign voluntarily or am terminated by the Company involuntarily, I shall not contact, or cause to be contacted, directly or indirectly, or engage in any form of oral, verbal, written, recorded, transcribed, or electronic communication with any Customer for the purposes of conducting business that is competitive or similar to that of the Company or for the purpose of disadvantaging the Company's and/or the Group's business in any way. For the purposes of this Agreement, "**Customer**" shall mean all persons or entities that have used or inquired of the Company's and/or Group's services at any time during the two-year period preceding the termination of my employment with the Company. I acknowledge and agree that the Customers did not use or inquire of the Company's and/or Group's services solely as a result of my efforts, and that the efforts of other Company personnel and resources are responsible for the Company's relationship with the Customers. I further acknowledge and agree that the identity of the Customers is not readily ascertainable or discoverable through public sources, and that the Company's list of Customers was cultivated with great effort and secured through the expenditure of considerable time and money by the Company.

      (b) I agree that for a period of twenty-four (24) months immediately following the termination of my employment with the Company, whether I resign voluntarily or am terminated by the Company involuntarily, I will not solicit, encourage, or induce, or cause to be solicited, encouraged or induced, directly or indirectly, any franchisee, joint venture, supplier, vendor or contractor who conducted business with the Company and/or the Group at any time during the two-year period preceding the termination of my employment with the Company, to terminate or adversely modify any business relationship with the Company and/or the Group or not to proceed with, or enter into, any business relationship with the Company and/or the Group, nor shall I otherwise interfere with any business relationship between the Company and/or the Group and any such franchisee, joint venture, supplier, vendor or contractor.

      (c) I acknowledge that I will derive significant value from the Company's agreement to provide me with the Proprietary Information of the Company to enable me to optimize the performance of my duties to the Company. I further acknowledge that my fulfillment of the obligations contained in this Agreement, including, but not limited to, my obligation neither to disclose nor to use the Company's Proprietary Information other than for the Company's exclusive benefit and my obligations not to solicit contained in Sections 6.1-6.2 herein, is necessary to protect the Company's Proprietary Information and, consequently, to preserve the value and goodwill of the Company.

      (d) I understand that nothing contained in this Section 6.1 shall apply to me if my Home State (as defined below) is California.

     6.2  *Employee Non-Solicitation.* I agree that until twenty-four (24) months immediately following the termination of my employment with the Company, whether I resign voluntarily or am terminated by the Company involuntarily, I will not directly or indirectly solicit, or recruit, or attempt to solicit, or recruit, any employee of the Company and/or the Group to leave their employment with the Company and/or the Group, nor will I contact any employee of the Company and/or the Group, or cause an employee of the Company and/or the Group to be contacted, for the purpose of leaving employment with the Company and/or the Group.

     6.3  *Non-Competition.* I agree that until twelve (12) months immediately

following the termination of my employment with the Company, whether I resign voluntarily or am terminated by the Company involuntarily, I will not engage in any Prohibited Activity. For purposes of this Section 6.3, "**Prohibited Activity**" is an activity in which I perform the job functions that I performed during my employment with Company, directly or indirectly, in whole or part, as an employee, employer, owner, operator, manager, advisor, consultant, agent, partner, director, stockholder, officer, intern or any other similar capacity for an entity engaged in the same or similar business as the Company and/or the Group, including those engaged in the business of developing and selling analytical software, whether existing or planned. I understand and agree that the restraint imposed under this Section 6.3 is necessary and reasonable to protect the Company's legitimate business interests and not unduly harsh or oppressive. Nothing herein shall prevent me from taking employment with an analytical software company where I am not performing the same functions, directly or indirectly, as set forth in this Section 6.3. I understand that nothing contained in this Section 6.3 shall apply to me if my Home State (as defined below) is California.

      6.4    *Acknowledgments and Representations.* I acknowledge that the Company sells and provides its products and services worldwide and agree that the time periods, geographic regions and scope limitations referred to in Sections 6.1-6.3 above are reasonable and valid in light of the nature and extent of the business conducted by the Company, especially in light of the Company's need to protect its Proprietary Information and the international scope and nature of the Company's business. I also represent that my experience and capabilities are such that the enforcement of the foregoing covenants will not prevent me from working in my occupation, from earning a livelihood, and acknowledge that it would cause the Company serious and irreparable injury and cost if I were to use my knowledge in competition with the Company or otherwise breach the obligations contained in this Agreement. If the scope of any of the restrictions set forth above are deemed by any court or tribunal to be too broad to permit enforcement of such restriction to its full extent, then such restriction shall be enforced to the maximum extent permitted by law, and the Company and I hereby consent and agree that such scope may be judicially modified accordingly in any proceeding brought to enforce such restriction. In the event of my breach or violation of Sections 6.1 – 6.3, or good faith allegation by the Company of my breach or violation of this Sections 6.1 – 6.3, the relevant restricted period(s) set forth in Sections 6.1 – 6.3 shall be tolled until such breach or violation, or dispute related to an allegation by the Company that I have breached or violated Sections 6.1 – 6.3, as applicable, has been duly cured or resolved, as applicable

      7. <u>At-Will Employment</u>. I agree that this Agreement is not an employment contract for any particular term and that I have the right to resign and the Company has the right to terminate my employment at will, at any time, for any or no reason, with or without cause, and with or without notice. In addition, this Agreement does not purport to set forth all of the terms and conditions of my employment, and, as an employee of the Company, I have obligations to the Company which are not set forth in this Agreement. However, the terms of this Agreement govern over any inconsistent terms and can only be changed by a subsequent written agreement signed by the CEO of the Company. The headings used in this Agreement are for reference purposes only and should have no effect on the interpretation of the Agreement.

      8. <u>Continuing Obligations</u>. I agree that my obligations under paragraphs 2, 3, 4, and 6 of this Agreement shall continue in effect after termination of my employment, regardless of the reason or reasons for termination, and whether such termination is voluntary or involuntary on my part, and that the Company is entitled to communicate my obligations under this Agreement to any future employer or potential employer of mine. My obligations under paragraphs 2, 3 and

4 also shall be binding upon my heirs, executors, assigns, and administrators and shall inure to the benefit of the Company, its subsidiaries, successors and assigns.

9. <u>Governing Law</u>. Any dispute in the meaning, effect or validity of this Agreement shall be resolved in accordance with the laws of the state in which I am primarily, physically located for work with the Company ("**Home State**") without regard to the conflict of laws provisions thereof. I further agree that if one or more provisions of this Agreement are held to be illegal or unenforceable under applicable Home State law, such illegal or unenforceable portion(s) shall be limited or excluded from this Agreement to the minimum extent required so that this Agreement shall otherwise remain in full force and effect and enforceable in accordance with its terms. This Agreement is fully assignable and transferable by the Company, but any purported assignment or transfer by me is void. I also understand that any breach of this Agreement will cause irreparable harm to the Company for which damages would not be an adequate remedy, and, therefore, Company will be entitled to injunctive relief with respect thereto in addition to any other remedies and without any requirement to post bond. I acknowledge and agree that if my Home State is New York or New Jersey, I shall indemnify the Company from any and all costs, fees, or expenses incurred by the Company (including, but not limited to, attorneys' fees) in successfully enforcing the terms of this Agreement against me (including, but not limited to, a court temporarily, partially, or fully granting any application, motion, or petition by the Company for injunctive relief) as a result of my breach or threatened breach of any provision contained herein.

10. <u>Entire Agreement</u>. This Agreement constitutes the entire agreement and understanding with respect to the subject matter herein and supersedes all prior written and oral agreements, discussions or representations between the parties regarding such subject matter. This Agreement may be executed in counterparts and by facsimile, and each counterpart and facsimile shall have the same force and effect as an original and shall constitute an effective, binding agreement on the part of each of the undersigned.

I HAVE READ THIS AGREEMENT CAREFULLY AND I UNDERSTAND AND ACCEPT THE OBLIGATIONS WHICH IT IMPOSES UPON ME WITHOUT RESERVATION. NO PROMISES OR REPRESENTATIONS HAVE BEEN MADE TO ME TO INDUCE ME TO SIGN THIS AGREEMENT, WHICH I SIGN VOLUNTARILY AND FREELY.

DocuSigned by:
*Radha Jain*
A5EB9297E6E34F9...
Employee Signature

Radha Jain
Employee Name (Printed)

12/7/2019
Date

# APPENDIX A

<u>(Applies only to employees with a California Home State)</u>

California Labor Code Section 2870. **Application of provision providing that employee shall assign or offer to assign rights in invention to employer.**

(a) Any provision in an employment agreement which provides that an employee shall assign, or offer to assign, any of his or her rights in an invention to his or her employer shall not apply to an invention that the employee developed entirely on his or her own time without using the employer's equipment, supplies, facilities, or trade secret information except for those inventions that either:

(1) Relate at the time of conception or reduction to practice of the invention to the employer's business, or actual or demonstrably anticipated research or development of the employer; or

(2) Result from any work performed by the employee for his employer.

(b) To the extent a provision in an employment agreement purports to require an employee to assign an invention otherwise excluded from being required to be assigned under subdivision (a), the provision is against the public policy of this state and is unenforceable.

# APPENDIX B

## PRIOR MATTER

N/A

# PALANTIR TECHNOLOGIES INC.
# ARBITRATION AGREEMENT

As a condition of my employment with Palantir Technologies Inc., its subsidiaries, affiliates, successors or assigns (together, "**Palantir**" or the "**Company**"), and in consideration of my employment with the Company and my receipt of the compensation now and hereafter paid to me by Company, I agree to the following provisions of this Palantir Arbitration Agreement (this "**Agreement**"):

1. **ARBITRATION AND EQUITABLE RELIEF.**

   A. *Arbitration*. In consideration of my employment with the Company, its promise to arbitrate all employment-related disputes, and my receipt of the compensation, pay raises, and other benefits paid to me by the Company, at present and in the future, I agree that any and all controversies, claims, or disputes with anyone (including the Company and any employee, officer, director, shareholder, or benefit plan of the Company, in their capacity as such or otherwise), arising out of, relating to, or resulting from my employment with the Company or the termination of my employment with the Company, including any breach of this Agreement, shall be subject to binding arbitration under the arbitration rules set forth in the New York Civil Practice Law and Rules, Article 75, Section 7501 through 7514 (the "**Rules**"), and pursuant to New York and federal law, and shall be brought in my individual capacity in arbitration, and not as a plaintiff or class member in any purported class or representative proceeding. The Federal Arbitration Act shall continue to apply with full force and effect notwithstanding the application of procedural rules set forth in the Rules. **Disputes that I agree to arbitrate, and thereby agree to waive any right to a trial by jury, include any statutory claims under local, state, or federal law, including, but not limited to, claims under Title VII of the Civil Rights Act of 1964, the Americans With Disabilities Act of 1990, the Age Discrimination in Employment Act of 1967, the Older Workers Benefit Protection Act, the Sarbanes-Oxley Act, the Worker Adjustment and Retraining Notification Act, the Fair Credit Reporting Act, the Family and Medical Leave Act, the Employee Retirement Income Security Act of 1974, the New York State Human Rights Law, the New York City Human Rights Law (if applicable), the New York Labor Code, the New York Workers' Compensation Law, claims of harassment, discrimination, and wrongful termination, and any statutory or common law claims. Notwithstanding the foregoing, I understand that nothing in this Agreement constitutes a waiver of my rights under Section 7 of the National Labor Relations Act.** I further understand that this agreement to arbitrate also applies to any disputes that the Company may have with me.

   B. *Procedure*. I agree that any arbitration will be administered by Judicial Arbitration & Mediation Services, Inc. ("**JAMS**"), pursuant to its Employment Arbitration Rules & Procedures (the "**JAMS Rules**"). which are available at https://www.jamsadr.com/rules-employment-arbitration/ and from People Operations. I understand that the parties to the arbitration shall each pay an equal share of the costs and expenses of such arbitration, except as prohibited by law, and understand each party shall separately pay for its respective attorneys' fees and costs. I agree that the arbitrator shall have the power to decide any motions brought

by any party to the arbitration, including motions for summary judgment and/or adjudication, motions to dismiss, and motions for class certification, prior to any arbitration hearing. I agree that the arbitrator shall issue a written decision on the merits. I also agree that the arbitrator shall have the power to award any remedies available under applicable law. I agree that the decree or award rendered by the arbitrator may be entered as a final and binding judgment in any court having jurisdiction thereof. I agree that the arbitrator shall administer and conduct any arbitration in accordance with New York law, including the New York Civil Procedure Laws and Rules, and that the arbitrator shall apply substantive and procedural New York law to any dispute or claim, without reference to rules of conflict of law. To the extent that the JAMS rules conflict with New York law, New York law shall take precedence. I agree that the decision of the arbitrator shall be in writing. I agree that arbitration under this Agreement shall be conducted in New York County, New York.

       C.    *Remedy*. Except as provided by the Rules and this Agreement, arbitration shall be the sole, exclusive, and final remedy for any dispute between me and the Company. Accordingly, except as provided for by the Rules and this Agreement, neither I nor the Company will be permitted to pursue court action regarding claims that are subject to arbitration.

       D.    *Availability of Injunctive Relief*. In addition to the right under the Rules to petition the court for provisional relief, I agree that any party may also petition the court for injunctive relief where either party alleges or claims a violation of this Agreement, the Proprietary Information and Invention Assignment Agreement between me and the Company, my employment Offer Letter with the Company, or any other agreement regarding trade secrets, confidential information, noncompetition, or nonsolicitation, if applicable. I understand that any breach or threatened breach of such an agreement will cause irreparable injury and that money damages will not provide an adequate remedy therefor and both parties hereby consent to the issuance of an injunction.

       E.    *Administrative Relief*. I understand that this Agreement does not prohibit me from pursuing an administrative claim with a local, state, or federal administrative body or government agency that is authorized to enforce or administer laws related to employment, including, but not limited to, the New York State Division of Human Rights, the New York City Commission on Human Rights (as applicable), the Equal Employment Opportunity Commission, the National Labor Relations Board, or the Workers' Compensation Board. This Agreement does, however, preclude me from pursuing court action regarding any such claim, except as required by law.

       F.    *Voluntary Nature of Agreement*. I acknowledge and agree that I am executing this Agreement voluntarily and without any duress or undue influence by the Company or anyone else. I further acknowledge and agree that I have carefully read this Agreement and that I have asked any questions needed for me to understand the terms, consequences, and binding effect of this Agreement and fully understand it, including that ***I am waiving my right to a jury trial***. Finally, I agree that I have been provided an opportunity

to seek the advice of an attorney of my choice before signing this Agreement.

G. *Confidentiality.* I acknowledge and agree that all aspects of an arbitration pursuant to this Agreement, including the hearing and recording of the proceeding, are confidential and not open to the public, except: (i) to the extent Palantir and I agree otherwise in writing; (ii) as may be appropriate in any subsequent proceeding between myself and Palantir; (iii) as may be necessary in connection with a court application for a preliminary remedy or a judicial challenge to an arbitration award or its enforcement; (iv) as may otherwise be necessary in response to a governmental agency or compulsory legal process; (v) as required by the Arbitrator in appropriate circumstances; or (vi) as required by law to ensure that this agreement to arbitrate is enforceable. Further, I agree that all settlement negotiations and mediations shall be confidential.

2. **GOVERNING LAW; CONSENT TO PERSONAL JURISDICTION**. This Agreement will be governed by the laws of the State of New York without regard to New York's conflicts of law rules that may result in the application of the laws of any jurisdiction other than New York. To the extent that any lawsuit is permitted under this Agreement, I hereby expressly consent to the personal and exclusive jurisdiction and venue of the state and federal courts located in New York for any lawsuit filed against me by the Company.

3. **ASSIGNABILITY.** This Agreement will be binding upon my heirs, assigns, executors, administrators, and other legal representatives, and will be for the benefit of the Company, its successors, and its assigns. There are no intended third-party beneficiaries to this Agreement, except as may be expressly otherwise stated. Notwithstanding anything to the contrary herein, Palantir may assign this Agreement and its rights and obligations under this Agreement to any successor to all or substantially all of Palantir's relevant assets, whether by merger, consolidation, reorganization, reincorporation, sale of assets or stock, or otherwise.

4. **ENTIRE AGREEMENT.** This Agreement, the Proprietary Information and Invention Assignment Agreement between me and the Company, and any executed written offer letter between me and the Company, to the extent such materials are not in conflict with this Agreement, sets forth the entire agreement and understanding between the Company and me with respect to the subject matter herein and supersedes all prior written and oral agreements, discussions, or representations between us, including, but not limited to, any representations made during my interview(s) or relocation negotiations. I represent and warrant that I am not relying on any statement or representation not contained in this Agreement. Any subsequent change or changes in my duties, salary, or compensation will not affect the validity or scope of this Agreement.

5. **SEVERABILITY.** If a court or other body of competent jurisdiction finds, or the Parties mutually believe, any provision of this Agreement, or portion thereof, to be invalid or unenforceable, such provision will be enforced to the maximum extent permissible so as to effect the intent of the Parties, and the remainder of this Agreement will continue in full force and effect.

6. **MODIFICATION, WAIVER.** No modification of or amendment to this Agreement, nor any waiver of any rights under this Agreement, will be effective unless in a writing signed by the CEO of Palantir and me. Waiver by Palantir of a breach of any provision of this Agreement will not operate as a waiver of any other or subsequent breach.

7. **SURVIVORSHIP.** The rights and obligations of the parties to this Agreement will survive termination of my employment with the Company.

Date: 12/7/2019

Signature: *Radha Jain*
A5FB3297E6F34F0...

Radha Jain
Name of Employee (typed or printed)