**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| PALANTIR TECHNOLOGIES INC., <br>                     Plaintiff, <br>     v. <br> HIRSH JAIN, RADHA JAIN, and JOANNA COHEN, <br>                     Defendants. | Civil Action No. 25-cv-08985-JPO <br><br> Hon. J. Paul Oetken |

## SUPPLEMENTAL DECLARATION OF JONATHAN JUNGCK

I, Jonathan Jungck, state and declare as follows:

1. My name is Jonathan Jungck, and I am a Healthcare Technical Lead at Palantir. I submit this declaration in support of Plaintiff Palantir Technologies Inc.'s ("Palantir") motion for a preliminary injunction.

2. I have personal knowledge of the matters set forth herein, based on my personal experience, and if called to testify as a witness, I could and would testify competently thereto.

3. As a Healthcare Technical Lead, I oversee over 130 employees who work with Palantir's healthcare customers on solutions to implement AI into their systems and operations. I also serve as Palantir's HIPAA Security Officer, in which capacity I help develop, implement, and manage security policies relating to HIPAA privacy rules. Given my roles, I am familiar with the documents and information Palantir uses to help identify and meet our customers' business needs.

4. I have reviewed the declaration of Joanna Cohen filed in support of Defendants' Opposition to Palantir's Renewed Application for a Preliminary Injunction. I understand that Ms. Cohen sent herself several Palantir documents through Slack and accessed those documents on her personal iPhone. I also understand that Ms. Cohen accessed various documents from Palantir's

systems and took photographs of those documents using her personal iPhone. I have reviewed all of these documents.

5. In the first instance, there are several photographs of screens found on Ms. Cohen's devices that contain proprietary and confidential Palantir information that Ms. Cohen did not discuss with particularity in her declaration. Specifically:

- Three images of parts of a statement of work for a specific and current customer, which would only be shared after that customer entered into a non-disclosure agreement with Palantir. They contain the nuts and bolts of how Palantir would engineer and architect a workflow for a customer, and they were built based upon confidential discussions with the customer and analysis of the suite of capabilities Palantir could potentially offer. This is highly confidential information.

- An internal team planning document for future features and build-outs of the product in Foundry. It includes a design of a user interface ("UI," which is how Palantir designs its workflows based upon its experience to deliver Palantir's offerings in the most user-friendly way and in a manner that is most value to each user) for specific users and how each use case could translate to specific users within a customer ecosystem. This document contains information about future plans that would not be released publicly, and knowledge of its contents would allow a competitor to launch a UI with copycat features.

- Several pages from a ▮▮▮▮ customer's ▮▮ solution. These documents come from a use case whose license amount over several years is in the ▮▮▮▮▮, and they contain information about how to analyze the problem of customer engagement, similar to the problems one of Percepta's customers was facing. These documents reflect how Palantir, specifically, my team, would solve that difficult problem step by step, in effect a playbook on how to run the

solution, and are currently used in the present. These documents are extremely valuable and confidential, and they provide details a competitor could use to create a copycat solution. Importantly, Ms. Cohen was not working on this project at the time of her departure.

6. With respect to the documents that Ms. Cohen does address in her declaration, many of her assertions and descriptions of Palantir documents are incorrect, incomplete, or misleading. The Palantir documents discussed in Ms. Cohen's declaration are available only through internal, secure repositories—primarily through HighSpot and Sharepoint—that only users with appropriate credentials can access. They are maintained as confidential and may be accessed only by individuals with a legitimate business reason to do so. Each of these documents contains highly sensitive and confidential business information which, if disclosed to any of Palantir's competitors, would permit those competitors to replicate Palantir's demonstrations and leverage Palantir's insights and strategies on use cases gleaned from years of work and financial investment. Such a disclosure would provide those competitors with a significant head start by relieving them of the need to make a comparable initial investment in the development of such information, as well as allow them to replicate Palantir's technology, client strategies, and market position.

- RJ_JC_00000134 (Ex. 233). Ms. Cohen claims that "Palantir describes much of the information contained in this screenshot online," but that misconstrues the nature of the information and its value. This document is not merely a list of information found scattered across the disparate webpages Ms. Cohen cites. It contains architectural models that diagram how the different functions interconnect and interact within the system, such as how a website or app flow through an API gateway into Foundry and then flow outward into different models, or a data connection flows into model training systems which also receive input from external websites. These diagrams cannot be assembled merely by looking at several public webpages, which at best

3

mention some aspect of an individual component or feature. The document contains particular value by providing an understanding of how these different pieces of technology can be combined into a coherent whole, which took significant investment by Palantir to design. This is not a document Palantir has made public.

- RJ_JC_00000062 (Ex. 234). Ms. Cohen claims that "Palantir describes much of the information contained in this document online," that "Palantir's relationship with the customers mentioned in this document are also described publicly," and that "much of the content in this document [was generated] using ChatGPT's model." But the document itself goes beyond the content scattered across the webpages cited by Ms. Cohen. It specifically describes Palantir's strategy for marketing a workflow, which the webpages Ms. Cohen cites in her declaration do not discuss and which cannot be replicated simply by using ChatGPT. Moreover, unlike the webpages Ms. Cohen cites, which merely list some Palantir customers who expressly agreed to allow Palantir to disclose their identities, the document identifies the customers Palantir has specifically targeted for this particular use case (as opposed to the hundreds of other use cases). Palantir identified these specific customers and their respective priorities through relationships Palantir has built, and it has also built the relationships to determine the specific customer employees to contact to address their priorities. These customer contacts are not public. The webpages Ms. Cohen cites merely state that Palantir held a CSE webinar, but the webpages do not provide the specific detailed information contained in this twelve-page document. This document also discusses Palantir's account prioritization methodology, which is not disclosed in the webinar or in the pages cited by Ms. Cohen, and access to this document could give a competitor a significant head start on developing particularized strategies for specific customers that Palantir developed over time and at great expense.

- RJ_JC_00000019 (Ex. 235). Ms. Cohen claims that "[m]any of the 'use cases' and customers described in this photograph are described by Palantir on its website," and that "Palantir's relationship with the customers mentioned in this document are also described publicly." This document is not public. Moreover, many of the specific items and use cases in the document are not public, such as ████████ and ████████████████, and which Palantir generally only discusses with potential customers in confidence. The linkages between customers and these workflows cannot be compiled using any publicly available information and could allow a competitor to benefit its marketing and sales strategies from Palantir's investments.

- RJ_JC_00000028 (Ex. 236). Ms. Cohen claims that "Palantir describes many of the 'use cases' described in this document on its website." But the document goes beyond merely identifying use cases that are disclosed in Palantir's website. Again, this document links use cases to specific customers, along with the value proposition (including the priority or key performance indicators). Nothing in the public documents Ms. Cohen cites connects these three data points together, and it is this specific combination that would allow a competitor to directly target a customer, knowing exactly the optimal strategy for approaching them, what they value, their main priority, and the exact use case to solve for that priority.

- RJ_JC_00000108 (Ex. 237). Ms. Cohen claims that "[t]he RCM process is a well-known process that is described publicly online" and that "[m]any of the specific 'use cases' referenced in this document are described on Palantir's website." Again, this document is not merely a list of information from the disparate webpages Ms. Cohen cites or a description of the revenue cycle management ("RCM") process, which in the healthcare industry refers to series of steps from the initial scheduling with a patient to the final payment and collections. It is a proprietary

model that diagrams how the different AI functions and features can and do interconnect and interact within the RCM process. Someone could not recreate these relationships, the product of significant investment by Palantir, just by going to the websites Ms. Cohen cites. This document also shows which specific components of the traditional RCM process Palantir has used based on its decades-long experience and resources to determine which are best suited for automation using AI. This is also not publicly available information and would be valuable to a competitor by shortcutting the research process needed to identify these relationships.

- RJ_JC_00000076 (Ex. 238). Ms. Cohen claims that "[t]his information is meant to be shared with potential Palantir customers," that "Palantir has made information about its Virtual Command Center and Staffing Solution 'use cases' available publicly online," and that "Palantir's relationships with the customers mentioned in this document are also described publicly." The document at issue does more than just identify use cases and customers that may be listed in the webpages Ms. Cohen cites, and any information would generally be shared with customers or potential customers in confidence. It provides detail regarding the most useful and highest revenue-generating workflows that Palantir has offered and specific customers have used (which Palantir does not publicly disclose). The specificity of the diagnosis of the problem and the solution exemplifies Palantir's expertise in this space. In other words, a competitor could take this document, and rather than pitching and developing 100 different use cases to each customer, leverage Palantir's time, resources, and experience to learn the handful of use cases that are most impactful and highest revenue generating for a given customer—saving the competitor significant time and effort, and allowing the competitor to impress customers with its deep knowledge of the best use cases for a given workflow.

- RJ_JC_00000097 (Ex. 239). Ms. Cohen claims that "[t]he concept of the Health Value Chain

is discussed publicly by Palantir online." However, the document goes far beyond simply mentioning this concept at the high level disclosed on Palantir's website. It identifies the pertinent use cases and Palantir's developed views as to which types of customers would be a symmetrical fit to the use cases, which Palantir does not publicly disclose. The document also includes nonpublic customer names. Again, this would allow a competitor to shortcut the significant effort and resources Palantir spent identifying the optimal opportunities to create and present to specific customers.

- RJ_JC_00000132 (Ex. 240). Ms. Cohen claims that "Palantir publicly discusses its Foundry Ontology on its website" and that "Palantir also describes many of the 'use cases' described in this document available on its website." However, this document goes beyond either merely identifying use cases that are disclosed in Palantir's website or a high-level description of the Foundry Ontology. It links use cases to several specific customers—e.g., HCA, Cardinal Health, and MD Anderson Cancer Center—along with the value proposition (including the priority or key performance indicators). Nothing public connects these three data points (use cases, customers, and value propositions) together, and it is this specific combination that would allow a competitor to directly target a customer, knowing exactly the optimal strategy for approaching them, what they value, their main priority, and the exact use case to solve for that priority.

- RJ_JC_00000164 (Ex. 241). Ms. Cohen claims that "[t]his document was meant to be shared with potential Palantir customers," that "Palantir also publicly discusses many of the described nurse staffing 'use cases' and case studies," and that "Palantir makes public that Cone Health is one of its customers." The document also goes beyond merely identifying use cases that are disclosed in Palantir's website, and it would generally be shared with customers or potential customers in confidence. The document reflects solution components, such as how a workflow

7

is architected, that are not publicly disclosed by Palantir. These solution components specifically articulate the impact of deploying Palantir's AI-powered workflows on customers' prior operations. This document would help members of a competitor's sales team describe the return on investment of deploying AI automation in hospital workflows. Moreover, some of the metrics in the document are not shared publicly, and the road map at the bottom is Palantir's particular, nonpublic solution on the order in which to tackle each solution to optimize efficiencies. This would allow a competitor using this document to shortcut Palantir's research and development processes.

- RJ_JC_00000106 (Ex. 242). Ms. Cohen claims that "[t]he second bullet in this photograph contains a website page that is meant to be shared with Palantir contacts and prospects," and that "[m]any of these 'use cases' and offerings named in the document are also described in much more detail publicly on Palantir's website." But the document goes beyond merely identifying use cases that may be disclosed in Palantir's website. It matches the use cases with the departments and types of people that would value them most. A competitor could not compile this information from the webpages Ms. Cohen cites. A competitor could use this document to identify the right individuals within an organization to target with a specific use case as part of a sales pitch. Thus, the document would allow the competitor to shortcut the learning process Palantir went through to identify customers' employees who have the greatest need for a particular use case.

- RJ_JC_00000148 (Ex. 243). Ms. Cohen claims that "[m]any of the 'use cases' and offerings named in the document are described in much more detail publicly on Palantir's website and by third parties." But the document goes beyond a mere identification of use cases that may be disclosed in several disparate webpages. It matches specific use cases with a potential

customer's organizational departments and employee or job types that would benefit most from utilizing a specific workflow. A competitor could use this document to identify the right individuals within an organization to target with a specific use case as part of a sales pitch. Thus, the document would allow the competitor to shortcut the learning process Palantir went through to identify customers' employees who have the greatest need for a particular use case.

- RJ_JC_00000152 (Ex. 244). Ms. Cohen claims that "Palantir salespeople were encouraged to share information within this document with potential Palantir customers" and that "Palantir also publicly discusses its work in staffing solutions in the healthcare industry." But for one thing, the document goes beyond a mere identification of use cases that may be disclosed in the webpage Ms. Cohen cites for the latter proposition. It is a collection of the most useful and highest revenue-generating workflows that Palantir has offered and customers have used. Moreover, the detail contained in the document would typically only be shared with a customer subject to a confidentiality agreement, and the document identifies specific customers for whom a particular solution has been deployed, which is not something that would be publicly disclosed. In other words, a competitor could take this, and rather than pitching 100 different use cases to customers, know the handful of use cases that are most impactful and highest revenue generating for a particular type of customer, saving significant time and effort.

- RJ_JC_00000159 (Ex. 245). Ms. Cohen claims that "[m]any of the 'use cases' and offerings named in the document are described in much more detail publicly on Palantir's website." But the document goes beyond merely identifying use cases that are disclosed in Palantir's website. It matches the use cases with the departments and types of people that would value them most. A competitor could not compile this information from the webpages that Ms. Cohen cites. In addition, a competitor could use this document to target individuals within an organization with

9

specific use case offerings, leveraging the research and experience Palantir had to expend learn this information, thereby gaining a head start on the competitor's sales efforts.

- RJ_JC_00000163 (Ex. 246). Ms. Cohen claims that "[m]any of the 'use cases' and offerings named in the document are described in much more detail publicly on Palantir's website." But the document goes beyond merely identifying use cases that are disclosed in Palantir's website. It is an internal document that describes experience-based strategies for sellers to pitch to potential customers, including emphasizing how Palantir can work within different customer systems and how Palantir could integrate with such systems. This document is not shared publicly, and it was built upon years of experience developing and pitching solutions to clients. A competitor could use this document as a starting point to identify strategies and shortcut this development process.

7. In sum, each of these documents, at minimum, contains a compilation of information that is valuable in its combined form because it provides insights about how to utilize and group different data points, and these insights were the result of significant research and investment by Palantir. Moreover, the documents contain information which is the result of Palantir's time, effort, and investment, and provide insights or knowledge about the relevant industries or workflows that would allow a competitor to more quickly target specific opportunities and customers than if the competitor had to start from scratch without that knowledge.

8. I declare under penalty of perjury that the foregoing is true and correct.

Dated: January 20, 2026
       New York, New York

By: _____
     Jonathan Jungck