**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| PALANTIR TECHNOLOGIES INC., <br><br> Plaintiff, <br><br> v. <br><br> HIRSH JAIN, RADHA JAIN, and JOANNA COHEN, <br><br> Defendants. | Civil Action No. 25-cv-08985-JPO <br><br> Hon. J. Paul Oetken |

**PLAINTIFF PALANTIR TECHNOLOGIES INC.'S**
**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'**
**MOTION TO STAY THIS ACTION AND COMPEL ARBITRATION**

GIBSON, DUNN & CRUTCHER LLP

200 Park Avenue
New York, NY 10166-0193
Telephone: 212.351.4000
Facsimile: 212.351.4035

Attorneys for Plaintiff

i

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ...................................................................................................1

BACKGROUND ........................................................................................................................3

    A.   The Parties' Agreements............................................................................................3

    B.   Palantir Files Suit Against Radha and Joanna Seeking a Temporary Restraining Order and Preliminary Injunction. ........................................................................................................4

    C.   Palantir Amends the Complaint, Adding Hirsh as a Defendant. .....................................5

    D.   Palantir's Motion for a Preliminary Injunction. ...............................................................5

ARGUMENT ............................................................................................................................7

    I.   The Agreements Expressly Permit Palantir to Seek Permanent and Additional Preliminary Injunctive Relief in Court.........................................................................................7

    II.   Defendants' Interpretation Asks the Court to Rewrite the Agreements. ...........................9

CONCLUSION........................................................................................................................14

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Adelman v. Adelman*,
741 N.Y.S.2d 841 (Sup. Ct. Kings Cnty. 2002) ..................................................................10

*Aetrex Worldwide, Inc. v. Sourcing For You Ltd.*,
555 F. App'x 153 (3d Cir. 2014) .......................................................................................12

*Air China Ltd. v. Li*,
2008 WL 754450 (S.D.N.Y. Mar. 17, 2008) .............................................................. 10, 11

*Baldwin Tech. Co. v. Printers' Serv., Inc.*,
2016 WL 354914 (S.D.N.Y. Jan. 27, 2016) .......................................................................13

*Bank of New York Mellon Tr. Co. v. Morgan Stanley Mortg. Cap., Inc.*,
821 F.3d 297 (2d Cir. 2016) ..............................................................................................10

*Days v. Cnty. of Westchester*,
2024 WL 917864 (S.D.N.Y. Mar. 4, 2024) .......................................................................10

*DXP Enters., Inc. v. Goulds Pumps, Inc.*,
2014 WL 5682465 (S.D. Tex. Nov. 4, 2014) .....................................................................13

*Erving v. Va. Squires Basketball Club*,
468 F.2d 1064 (2d Cir. 1972) ............................................................................................13

*First Options of Chicago, Inc. v. Kaplan*,
514 U.S. 938 (1995) .............................................................................................................8

*Frydman v. Diamond*,
2015 WL 5294790 (S.D.N.Y. Sept. 10, 2015) ....................................................2, 9, 11, 12

*Jin Ming Chen v. Ins. Co. of the State of Pennsylvania*,
36 N.Y.3d 133 (2020) ........................................................................................................10

*Major, Lindsey & Africa, LLC v. Mahn*,
2010 WL 3959609 (S.D.N.Y. Sept. 7, 2010) ......................................................... 3, 12, 13

*Morgan v. Sundance, Inc.*,
596 U.S. 411 (2022) ................................................................................................... 2, 7, 14

*Mount Lemmon Fire Dist. v. Guido*,
586 U.S. 1 (2018) ...............................................................................................................10

*New York v. Oneida Indian Nation*,
90 F.3d 58 (2d Cir. 1996) ................................................................................................8, 9

*Opals on Ice Lingerie v. Bodylines Inc.*,
320 F.3d 362 (2d Cir. 2003) ................................................................................................8

*Pony, Inc. v. Wiesner Prods., Inc.*,
2016 WL 11951548 (S.D.N.Y. Mar. 9, 2016) ...................................................................12

**TABLE OF AUTHORITIES**
(*continued*)

Page(s)

*Remy Amerique, Inc. v. Touzet Distrib., S.A.R.L.*,
    816 F. Supp. 213 (S.D.N.Y. 1993) ........................................................................13

*Rent-A-Center, W., Inc. v. Jackson*,
    561 U.S. 63 (2010) ..................................................................................................8

*Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*,
    489 U.S. 468 (1989) .............................................................................................8, 9

*WMT Invs., LLC v. Visionwall Corp.*,
    2010 WL 2720607 (S.D.N.Y. June 28, 2010) .......................................................13

**Rules**

C.P.L.R. § 7502(c) ............................................................................................... 4, 9, 11

C.P.L.R. § 7503(a) .........................................................................................................7

## PRELIMINARY STATEMENT[1]

Palantir brought this lawsuit to enjoin Defendants from continuing to execute their plan to "pillage" Palantir's top engineers and steal its confidential information to build a copycat business in breach of their legal obligations to Palantir regarding "confidential information, noncompetition, or nonsolicitation." Dkt. 33-1, 33-2, 33-3 (the "Agreements") ¶ 1.D. After just six weeks of limited, expedited discovery from two of the three Defendants (none from Hirsh), the Court preliminarily enjoined all three Defendants from continuing that conduct and required Joanna to remediate her theft of Palantir's confidential information. Dkt. 90 at 40. That relief was crucial to halting Defendants' scheme in its tracks, and in stopping the irreparable harm Defendants inflicted through their unlawful conduct.

But there is no requirement that this action end there. Palantir has the right—under its identical Agreement with each Defendant—to pursue both (1) permanent injunctive relief against each Defendant, and (2) additional preliminary injunctive relief that may (as this case has already proven) emerge from discovery. Indeed, the Court recognized in its preliminary injunction decision that Palantir had taken only limited, expedited discovery and expressly *invited* Palantir to renew its request for broader injunctive relief after additional discovery. Dkt. 90 at 37-38. Defendants' motion to compel arbitration is a transparent effort to avoid a process expressly contemplated by the parties' Agreements and invited by the Court's preliminary injunction ruling.

The Court should deny Defendants' motion because the plain language of the parties' Agreements requires it.[2] Each Agreement provides that Palantir may "petition the court for

---

[1] Except where noted, internal citations and quotations are omitted for clarity, and all emphases have been added.

[2] Defendants now concede that a clause in their Agreements exempts "provisional relief"—like preliminary injunctions—from arbitration. Dkt. 100 at 10; Agreements ¶ 1.D. This concession follows the Court's rejection of Defendants' analogous arguments during the hearing—that Palantir's preliminary injunction was equivalent to a permanent injunction, and so *any* injunction was inappropriate because Palantir should be arbitrating its claims. Hr'g Tr. at 109-10.

1

injunctive relief" for violations of Defendants' Proprietary Information and Invention Assignment Agreements, or any other agreements regarding "confidential information, noncompetition, or nonsolicitation." *Id.* ¶ 1.D. That clause unambiguously encompasses permanent injunctive relief. *See, e.g.*, *Frydman v. Diamond*, 2015 WL 5294790, at *7 (S.D.N.Y. Sept. 10, 2015) (request for permanent injunction not subject to arbitration because the parties' agreement stated that "the party initiating an action seeking injunctive or equitable relief may at his/her/its election bring such action in a court"). It is undisputed that Palantir seeks injunctive relief for such violations in this action. As a result, Palantir is entitled to continue its pursuit of permanent and additional preliminary injunctive relief from this Court.

Defendants' contrary argument depends on rewriting the parties' Agreements. They claim that although Palantir was entitled to seek *provisional* injunctive relief in court, any request for *additional* injunctive relief must be arbitrated. But the parties' Agreements contain ***two*** distinct carveouts from arbitration: (1) one for "provisional relief" in aid of arbitration; ***and*** (2) a separate one for "injunctive relief." Defendants' interpretation collapses these provisions into one and effectively deletes the second. Basic principles of contract interpretation foreclose that result.

The law is as unambiguous as the contract: Defendants cannot invoke the Federal Arbitration Act's presumption in favor of arbitration to salvage their strained interpretation. *See Morgan v. Sundance, Inc.*, 596 U.S. 411, 418 (2022) ("But a court may not devise novel rules to favor arbitration over litigation . . . . The federal policy is about treating arbitration contracts like all others, not about fostering arbitration."). The FAA does not require arbitration where the parties have not agreed to it. *Id.* at 419 (there "is a bar on using custom-made rules, to tilt the playing field in favor of (or against) arbitration"). And where (as here) the parties expressly limit the

2

claims subject to arbitration, the federal policy favoring arbitration yields to the terms of their Agreement.

Defendants also argue that allowing Palantir to pursue additional injunctive relief here could result in the Court and a hypothetical arbitrator potentially ruling on the same issues. But Defendants cite no authority supporting their claim that courts should disregard clear contractual language for this hypothetical possibility—and in fact, New York courts have explicitly rejected this position. *See Major, Lindsey & Africa, LLC v. Mahn*, 2010 WL 3959609, at *4 (S.D.N.Y. Sept. 7, 2010) (affirming plaintiff's right to pursue permanent injunctive relief in court because "the Arbitration Agreement specifically contemplates that damages claims relating to the same subject matter will have to be arbitrated, notwithstanding the obvious duplication of effort that would entail").

Defendants' attempt to sidestep the parties' Agreements permitting Palantir to pursue permanent and additional preliminary injunctive relief in Court—filed on the eve of discovery contemplated by this Court—should be denied.

## BACKGROUND

### A.    The Parties' Agreements.

In exchange for millions of dollars of compensation and access to Palantir's most sensitive confidential information (including its source code), Defendants entered into restrictive covenant agreements with Palantir. Alongside those restrictive covenant agreements, Defendants also entered into identical arbitration agreements, each of which provides that "any and all controversies, claims, or disputes . . . arising out of, relating to, or resulting from my employment with the Company or the termination of my employment with the Company . . . shall be subject to binding arbitration." Agreements ¶ 1.A. The Agreements contain two carveouts, permitting "any party" to "petition the court" for both "provisional relief" and "in addition . . . injunctive relief":

3

> *Availability of Injunctive Relief.* ***In addition to the right under the Rules to petition the court for provisional relief, I agree that any party may also petition the court for injunctive relief*** where either party alleges or claims a violation of this Agreement, the Proprietary Information and Invention Assignment Agreement between me and the Company, my employment Offer Letter with the Company, or any other agreement ***regarding trade secrets, confidential information, noncompetition, or nonsolicitation***, if applicable.

*Id.* ¶ 1.D (emphases added).  The "Rules" refer to New York's C.P.L.R. Sections 7501-7514.  *Id.* ¶ 1.A.  C.P.L.R. § 7502(c) addresses "[p]rovisional remedies" and provides that a court may issue a preliminary injunction "upon the ground that the award to which the applicant may be entitled may be rendered ineffectual without such provisional relief."

### B.    Palantir Files Suit Against Radha and Joanna Seeking a Temporary Restraining Order and Preliminary Injunction.

On October 30, 2025, Palantir filed suit against Radha and Joanna, asserting claims for contractual violations committed in support of their new competing venture—Percepta—which had just emerged from "stealth-mode." Dkt. 1.  At the same time, Palantir sought a temporary restraining order, preliminary injunction, and expedited discovery to prevent the ongoing irreparable harm it was suffering from Radha and Joanna's misconduct.  Dkt. 6-7.

On November 3, 2025, Radha and Joanna stipulated to a temporary restraining order and limited, expedited discovery.  Dkt. 22. Although that discovery was restricted in scope and did not include documents from or a deposition of Hirsh, it still revealed Hirsh's misconduct.  That misconduct included his solicitation of Radha, as well as coordinated efforts between Hirsh and Radha—including while Radha was still a Palantir employee—to "pillage" Palantir's workforce and solicit one of Palantir's prospective customers.  *See* Dkt. 44 at 13-18, 19-20.  Limited, expedited discovery also revealed that Joanna exfiltrated dozens of confidential Palantir documents in the period leading up to her departure, including by taking photographs of such

4

documents with her personal phone for reasons she has never adequately explained.  *See id.* at 21-23; Dkt. 90 at 18.

### C.    Palantir Amends the Complaint, Adding Hirsh as a Defendant.

In light of the evidence uncovered during expedited discovery, Palantir amended its complaint to add Hirsh as a defendant.  The First Amended Complaint asserted claims for breaches of noncompetition (Radha and Joanna), employee nonsolicitation (Hirsh and Radha), customer nonsolicitation (Joanna),[3] confidentiality (Joanna), and return of property (Joanna) obligations as well as a claim for tortious interference with contract (Hirsh) pertaining to Radha's loyalty and nonsolicitation obligations.  Dkt. 33 ¶¶ 193-232.  Palantir seeks an injunction prohibiting Defendants from breaching their contractual obligations to Palantir, working for Percepta and/or General Catalyst, participating in recruiting or hiring on behalf of Percepta and/or General Catalyst, or inducing others to violate their contractual obligations to Palantir, as well as requiring Defendants to account for and return all Palantir confidential and/or proprietary information in their possession, custody, or control.  *Id.* Prayer for Relief ¶¶ A-G.

### D.    Palantir's Motion for a Preliminary Injunction.

On December 12, 2025, Palantir filed a renewed motion for a preliminary injunction seeking the relief requested in the First Amended Complaint.  Dkt. 44-45.  On February 18, 2026, the Court granted the motion in part.  It held that Palantir's "employee non-solicitation provision is likely enforceable" and that "Palantir is likely to succeed in showing that Hirsh Jain and Radha Jain breached that provision."  Dkt. 90 at 31.  The Court found that "Hirsh Jain solicited Radha Jain, as evidenced by his message asking her to consider joining Percepta and his later

---

[3] Though the phase "non-servicing agreement" appeared at points of this case, the Court's preliminary injunction order referred to the "customer non-solicitation provision at issue" in Palantir's fourth cause of action.  Dkt. 90 at 35; *see also* Dkt. 33 at 49.

acknowledgment that he was in sell mode." *Id.* at 32. "He also recruited [Joanna] Cohen, as evidenced by their meeting, his introduction of her to other Percepta members, and his discussions with her about making an offer and negotiating terms." *Id.* The Court also found that Hirsh "introduced [Joanna] Cohen to Radha Jain, who then also participated in hiring and recruiting [Joanna] Cohen," and that "Radha Jain also attempted to recruit Palantir employees, at least indirectly, by feeding names to Hirsh Jain, who then attempted to recruit Palantir employees by contacting at least one person Radha Jain suggested with the goal of poaching him." *Id.*

In addition, the Court ruled that Joanna "surreptitiously sent herself confidential materials that she retained after her termination of employment with Palantir" and that "an injunction is needed to assure that she does not use any confidential information covered by the Confidentiality Agreement." *Id.* at 37. The Court rejected Defendants' argument "that the Stipulated TRO has mooted any confidentiality claim" because "***given the limited expedited discovery that has been conducted thus far, it is possible that subsequent investigations may reveal that Palantir property exists on additional devices or has in fact been disseminated to Percepta or others***." *Id.* (emphasis added). And although the Court only partially granted Palantir the relief it sought against Hirsh at the preliminary injunction phase, it stated that "***Hirsh Jain has not been deposed***," and that "***[f]urther discovery may bear out Palantir's allegations of knowledge and intentional procurement***" to support its tortious interference with contract claim. *Id.* at 38 (emphasis added).

6

**ARGUMENT**[4]

"The federal policy is about treating arbitration contracts like all others, not about fostering arbitration"—and these Agreements are unambiguous. *Sundance*, 596 U.S. at 418. The Court should deny Defendants' motion because the Agreements expressly permit Palantir to pursue preliminary ***and permanent*** injunctive relief from this Court for violations of Defendants' Proprietary Information and Invention Assignment Agreements or any other agreements regarding trade secrets, confidential information, noncompetition, or nonsolicitation. *See* Agreements ¶ 1.D. Defendants do not dispute that Palantir seeks "injunctive relief" relating to violations of these Agreements. And the Court has already recognized Palantir's right to continue this case to pursue broader injunctive relief, inviting Palantir to pursue additional discovery in its pursuit because such further discovery "***may bear out Palantir's allegations of knowledge and intentional procurement***" and "***may reveal that Palantir property exists on additional devices or has in fact been disseminated to Percepta or others***." Dkt. 90 at 37, 38 (emphasis added).[5]

Defendants' contrary position depends on collapsing two distinct contractual provisions into one and disregarding the parties' express allocation of claims between arbitrators and courts. Neither the Federal Arbitration Act nor canons of contractual construction permit that result.

## I.     The Agreements Expressly Permit Palantir to Seek Permanent and Additional Preliminary Injunctive Relief in Court.

Palantir seeks permanent and additional preliminary injunctive relief in this action and the parties have agreed that Palantir has the right to "petition the court for [such] injunctive relief."

---

[4] Defendants half-heartedly suggest that the parties delegated the question of arbitrability to an arbitrator by incorporating the JAMS Rules. *See* Dkt. 100 at 7 n.5. This argument is meritless. Defendants ignore other contract language stating that "[t]o the extent that the JAMS rules conflict with New York law, New York law shall take precedence." Agreements ¶ 1.B. Because New York law requires arbitrability disputes to be decided by a court, *see* C.P.L.R. § 7503(a), this arbitrability dispute must be decided by this Court.

[5] Palantir is already aware of at least one unambiguous instance of Percepta—still run by Hirsh as CEO and Radha as co-founder and hiring manager—attempting to solicit a Palantir employee after this Court issued its Preliminary Injunction Order.

7

Agreements ¶ 1.D.  Arbitration agreements are contracts, "on an equal footing with other contracts," so courts must "enforce them according to their terms."  *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010).   The purpose of the Federal Arbitration Act was "to make arbitration agreements as enforceable as other contracts, ***but not more so***."  *Opals on Ice Lingerie v. Bodylines Inc.*, 320 F.3d 362, 369 (2d Cir. 2003) (emphasis in original).  As the Supreme Court has explained:

> "[T]he FAA does not require parties to arbitrate when they have not agreed to do so, nor does it prevent parties who do agree to arbitrate from excluding certain claims from the scope of their arbitration agreement.  It simply requires courts to enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms."

*Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989).  Parties may "limit by agreement the claims they wish to submit to arbitration," and "[i]f the parties make such an intention clear, the federal policy favoring arbitration must yield."  *New York v. Oneida Indian Nation*, 90 F.3d 58, 61 (2d Cir. 1996).  "Where the parties to an arbitration agreement specifically have excepted a certain type of claim from mandatory arbitration, it is the duty of courts to enforce not only the full breadth of the arbitration clause, but its limitations as well."  *Id.* at 62.  "When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally . . . should apply state-law principles."  *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).

Applying these principles, Palantir's right to seek permanent and additional preliminary injunctive relief in court is clear.  The Agreements state that the parties may "petition the ***court*** for injunctive relief."  Agreements ¶ 1.D (emphasis added).   Palantir's First Amended Complaint makes clear that it seeks "injunctive relief" by asking the Court to "enjoin" Defendants from engaging in certain activities, and to "require" Defendants to engage in other activities.  Dkt. 33 Prayer for Relief ¶¶ D-G.  Defendants do not dispute this point.  Accordingly, the relief Palantir

continues to seek from this Court is the precise type of relief the parties agreed need not be resolved in—or compelled to—arbitration. *See, e.g.*, *Frydman*, 2015 WL 5294790 at *5, *7 (request for permanent injunction not subject to arbitration because the parties' agreement stated that "the party initiating an action seeking injunctive or equitable relief may at his/her/its election bring such action in a court"). This is why Defendants' general statement that any doubts should be resolved in favor of arbitration under the FAA, Dkt. 100 at 8, is not relevant to this dispute: there are no doubts here given the plain language of the Agreements. "The FAA does not require parties to arbitrate when they have not agreed to do so." *Volt*, 489 U.S. at 478. Here, because the parties clearly "limit[ed] by agreement the claims they wish to submit to arbitration . . . the federal policy favoring arbitration must yield." *Oneida*, 90 F.3d at 61.

## II.    Defendants' Interpretation Asks the Court to Rewrite the Agreements.

Defendants offer a contorted reading of the Agreements' unambiguous carveout from arbitration for "injunctive relief" that contradicts several basic principles of contract interpretation. Defendants argue that the phrase "[i]n addition to the right under the Rules to petition the court for provisional relief, I agree that any party may also petition the court for injunctive relief" restricts the parties to pursue *only* provisional relief in aid of arbitration. *See* Dkt. 100 at 8-9. But the plain language of the text creates two distinct rights to relief. First, it recognizes the existing right to seek "provisional relief" in aid of arbitration pursuant to C.P.L.R. § 7502(c). Agreements ¶ 1.D. Second—and separately—it states that, "in addition," a party may "also petition the court for injunctive relief" when it alleges a violation of certain agreements, including those at issue here. *Id.* Defendants' attempt to collapse these distinct provisions into one is incompatible with the text and structure of the Agreements, and cannot be squared with basic principles of contract interpretation, for at least three reasons.

*First*, New York courts have long recognized the "well established principle that, where contract provisions use different language, courts must assume the parties intended different meanings." *Bank of New York Mellon Tr. Co. v. Morgan Stanley Mortg. Cap., Inc.*, 821 F.3d 297, 309 (2d Cir. 2016); *Jin Ming Chen v. Ins. Co. of the State of Pennsylvania*, 36 N.Y.3d 133, 140 (2020) ("[T]he use of different terms in the same agreement . . . implies that they are to be afforded different meanings."). That principle alone forecloses Defendants' attempt to treat "provisional relief" and "injunctive relief" as interchangeable.

*Second*, the structure of the provision reinforces the conclusion that "provisional relief" and "injunctive relief" are distinct concepts. The Agreements state that, "in addition to" the right to seek provisional relief, a party "may also" petition the court for injunctive relief. Agreements ¶ 1.D. Those phrases are additive, not duplicative. They signal that the Agreements create separate, cumulative rights—not a single, restated one. *See, e.g.*, *Mount Lemmon Fire Dist. v. Guido*, 586 U.S. 1, 6 (2018) ("[A]lso" is "a term of enhancement" that "create[s] a separate category"); *Days v. Cnty. of Westchester*, 2024 WL 917864, at *10 (S.D.N.Y. Mar. 4, 2024) ("[U]se of the phrase 'in addition to' . . . allows a Signatory Municipality to request additional specialized services."); *Adelman v. Adelman*, 741 N.Y.S.2d 841, 845-46 (Sup. Ct. Kings Cnty. 2002) ("The dictionary definition of the terms 'in addition' is 'besides' or 'over and above.'"). The distinction between the two clauses and their scope is further evidenced by the fact the "provisional relief" clause applies to all claims, while the "injunctive relief" clause specifies a narrower list of causes of action. Defendants' interpretation disregards both the text and structure of the provision.

*Third*, New York law independently prohibits Defendants' reading for a separate reason: it would render the "injunctive relief" clause superfluous. *See Air China Ltd. v. Li*, 2008 WL 754450, at *1-2 (S.D.N.Y. Mar. 17, 2008) ("[A]n interpretation of a contract that has the effect of rendering

10

at least one clause superfluous or meaningless . . . will be avoided if possible."). The first clause already affirms that courts have authority to grant provisional relief in aid of arbitration under C.P.L.R. § 7502(c). If the "injunctive relief" clause means only that same thing, it serves no purpose. The Agreements cannot be read to include a meaningless provision. *See Air China*, 2008 WL 754450, at *2 (denying motion to compel arbitration premised on contractual interpretation that would render terms "meaningless").

Defendants invent a reading that would align with their preferred procedure for this case, but New York courts have rejected precisely the sort of illogically narrow construction that Defendants offer. In *Frydman*, the agreement provided that "the party initiating an action seeking injunctive or equitable relief may at his/her/its election bring such action in a court of competent jurisdiction." 2015 WL 5294790, at *5. The plaintiff argued that the exclusion "provides the parties an alternative to arbitration for all actions—such as this one—in which a party seeks equitable relief." *Id.* at *6. The defendants—like the Defendants here—argued that "the provision should be read like a standard 'aid of arbitration' provision of the sort that allows a party to an arbitration agreement to seek equitable or injunctive relief . . . to maintain the status quo pending arbitration." *Id.* But the court in *Frydman* rejected the defendants' attempt to contort "the clear meaning of the words that the parties chose to reflect their agreement," observing that the agreement "differs markedly from common aid of arbitration provisions" which "typically provide that litigation is permitted only in order to assist or supplement anticipated or pending arbitration." *Id.* at *6-7. The court declined "defendants' invitation to re-write [the agreement] into an aid in arbitration provision simply because that reading promotes arbitration," holding instead that "the parties have clearly agreed to allow the plaintiff to bring an action seeking injunctive or equitable relief in this court." *Id.* at *7. This Court should similarly decline Defendants' invitation for a

11

rewrite given the parties' agreement that either party is permitted to seek both permanent and additional preliminary injunctive relief in court.

Defendants also argue that allowing Palantir "to petition the court for injunctive relief" would "render the arbitration clause meaningless" because "the Court would have to rule on the actual merits of Palantir's claims, allowing Palantir to bypass arbitration entirely and litigate a claim . . . through careful drafting of its prayer for relief." Dkt. 100 at 8-9. In other words, they say the clause permits a court to issue a permanent injunction only after an arbitrator decides the merits. This is plainly wrong: courts routinely hold that analogous clauses cover the entire permanent injunction proceeding. *See, e.g.*, *Frydman*, 2015 WL 5294790, at *5, *7 (request for permanent injunction not subject to arbitration because the parties' agreement stated that "the party initiating an action seeking injunctive or equitable relief may at his/her/its election bring such action in a court"); *Major*, 2010 WL 3959609, at *3-4 (request for permanent injunction not subject to arbitration because the parties' agreement stated that claims "seeking injunctive or declaratory relief" could be pursued in court); *Pony, Inc. v. Wiesner Prods., Inc.*, 2016 WL 11951548, at *7 (S.D.N.Y. Mar. 9, 2016) (request for permanent injunction not subject to arbitration because the parties' agreement stated that "injunctive relief" could be pursued in court); *Aetrex Worldwide, Inc. v. Sourcing For You Ltd.*, 555 F. App'x 153, 154-55 (3d Cir. 2014) (arbitration exclusion for "an action seeking [an] injunction . . . unambiguously excepts the request for a permanent injunction"). There is nothing in the Agreements or the law that precludes this Court from reaching the merits here and providing the additional injunctive relief Palantir seeks.

New York courts have rejected Defendants' exact argument for overriding the plain language of an agreement because a court and arbitrator could potentially rule on the same issues. In *Major*, the agreement provided that "Claims Not Covered by the [Arbitration] Agreement"

12

included "Claims, either by the Company or by me, seeking injunctive or declaratory relief with respect to any confidentiality, return of property, non-solicitation, non-compete, or nondisparagement covenants that I have with the Company." 2010 WL 3959609, at *3.  The court recognized that "the claims in this case are substantially duplicative of various claims for money damages that are subject to arbitration," but held that "the Arbitration Agreement specifically contemplates that damages claims relating to the same subject matter will have to be arbitrated, notwithstanding the obvious duplication of effort that would entail."[6]  *Id.* at *4.  The court ultimately ruled that because "[t]he complaint seeks injunctive relief," the action "falls entirely and explicitly within the terms of the carve-out to the arbitration clause." *Id.*

None of the cases cited by Defendants support a different result.  The arbitration exclusions in *Erving v. Va. Squires Basketball Club*, 468 F.2d 1064 (2d Cir. 1972), *Baldwin Tech. Co. v. Printers' Serv., Inc.*, 2016 WL 354914 (S.D.N.Y. Jan. 27, 2016), *Remy Amerique, Inc. v. Touzet Distrib., S.A.R.L.*, 816 F. Supp. 213 (S.D.N.Y. 1993), *DXP Enters., Inc. v. Goulds Pumps, Inc.*, 2014 WL 5682465 (S.D. Tex. Nov. 4, 2014), and *WMT Invs., LLC v. Visionwall Corp.*, 2010 WL 2720607 (S.D.N.Y. June 28, 2010), all lacked the dual-clause structure present here of a provision expressly permitting "provisional relief" in aid of arbitration alongside a separate clause authorizing "injunctive relief" in court.  That distinction is dispositive.  In addition, *Erving* involved a request for provisional relief in court in aid of arbitration, not an action seeking permanent or additional preliminary injunctive relief.  And *Baldwin* involved a motion for a

---

[6] Defendants have repeatedly offered malign explanations for Palantir's decision to not initiate arbitration for money damages against them at this time. *See* Dkt. 100 at 9 n.6; Hr'g Tr. at 58; 110; 113.  Instead, the possibility of "obvious duplication" evident from the unambiguous plain text informs Palantir's consistent reading of its own contract. *See* Hr'g Tr. at 126 (Palantir's Counsel: "Actually, there is a separate lawsuit involving Palantir where Palantir did not pursue an arbitration . . . . Palantir did say it may pursue arbitration or intended to pursue arbitration, and it had not and did not in that case.  The contracts at issue make very clear, your Honor, that there is one forum in which we can obtain injunctive relief.").

preliminary injunction where arbitrability was not even at issue, relegating the commentary on arbitrability to mere dicta.

None of these cases involved comparable contractual language and/or procedural postures. No relevant authority supports Defendants' attempt to rewrite the Agreements' plain and unambiguous terms dictating that Palantir's request for additional injunctive relief should continue to be heard by this Court. To the contrary, Justice Kagan's unanimous opinion in *Sundance* explained there "is a bar on using custom-made rules, to tilt the playing field in favor of (or against) arbitration." 596 U.S. at 419. This Court has already enjoined each Defendant for disregarding the terms of their Agreements with Palantir—and today, they attempt to disregard them once again.

## CONCLUSION

For these reasons, Palantir respectfully requests that the Court deny Defendants' motion.

Dated: April 3, 2026

**GIBSON, DUNN & CRUTCHER LLP**

By: */s/ Harris M. Mufson*

Harris M. Mufson
Ilissa Samplin
Justin M. DiGennaro
Zachary A. Schreiber

GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166-0193
Telephone: 212-351-4000
hmufson@gibsondunn.com
jdigennaro@gibsondunn.com
zschreiber@gibsondunn.com

GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: 213-229-7000
isamplin@gibsondunn.com

*Attorneys for Palantir Technologies Inc.*

15

**WORD COUNT CERTIFICATION**

I, Harris M. Mufson, an attorney duly admitted to practice law before this Court, hereby certify that this memorandum of law complies with the word limit set forth in Local Civil Rule 7.1 because it contains no more than 4,390 words, excluding the parts of the motion exempted from the word limit by Local Civil Rule 7.1.  In preparing this certification, I have relied on the word count of the word-processing system used to prepare this memorandum of law.

Dated: April 3, 2026                                    By:  _/s/ Harris M. Mufson_

                                                             Harris M. Mufson