**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| PALANTIR TECHNOLOGIES INC.,<br>Plaintiff,<br>v.<br>HIRSH JAIN, RADHA JAIN, and JOANNA COHEN<br>Defendants. | Civil Action No. 25-cv-08985-JPO<br><br>Hon. J. Paul Oetken |

**PLAINTIFF PALANTIR TECHNOLOGIES INC.'S**
**MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR**
**AN ORDER ENTERING A FORENSIC INSPECTION AND REMEDIATION PROTOCOL**

**ORAL ARGUMENT REQUESTED**

GIBSON, DUNN & CRUTCHER LLP

200 Park Avenue
New York, NY 10166-0193
Telephone: 212.351.4000
Facsimile: 212.351.4035

Attorneys for Plaintiff

# Contents

INTRODUCTION ........ 1
BACKGROUND ........ 1
I. Palantir Initiated This Action to Remedy Cohen's Theft of Confidential Information ........ 1
II. Cohen Agrees To Return Palantir Confidential Information ........ 2
III. Percepta and General Catalyst Refuse to Provide Any Details Concerning Their Purported "Search" for Palantir Confidential Information ........ 2
IV. Cohen Disputes the Confidentiality of the Documents She Stole, Represents She Has Returned Everything to Palantir, and Claims Nothing Was Disseminated to Percepta or General Catalyst ........ 3
V. The Court Invites Palantir to Engage In "Subsequent Investigations" to Ascertain If Its Confidential Information Has Been "Disseminated to Percepta Or Others" ........ 4
VI. Cohen Obfuscates and Delays in Providing Details Concerning Her Purported "Remediation" Efforts Pursuant to the Stipulated TRO ........ 4
VII. Palantir Proposes a Reasonable Forensic Inspection and Remediation Protocol ........ 6
ARGUMENT ........ 8
I. Percepta-Issued Accounts Accessible on Cohen's Personal Phone ........ 8
II. Review by Palantir's Counsel ........ 10
III. Application of Search Terms to the Original Images ........ 12
IV. Cohen's Control Over the Cohen Devices and Cohen Accounts ........ 13
CONCLUSION ........ 14

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Benthos Master Fund, Ltd. v. Etra*,
2023 WL 8275920 (S.D.N.Y. Nov. 30, 2023) ....................11

*GEP Admin. Servs., LLC v. Wiseman*,
2024 WL 5454570 (M.D. Tenn. June 11, 2024) ....................11

*Getachew v. L&S Invs., LLC*,
2026 WL 412526 (D. Conn. Feb. 13, 2026) ....................9

*Gross v. Lundski*,
304 F.R.D. 136 (W.D.N.Y. 2014) ....................9

*HP Tuners, LLC v. Cannata*,
2020 WL 4905533 (D. Nev. Aug. 20, 2020) ....................12

*Mphasis Corp. v. Rojas*,
2025 WL 1640384 (S.D.N.Y. June 9, 2025) ....................8

*OL Priv. Couns., LLC v. Olson*,
2022 WL 16574308 (D. Utah Nov. 1, 2022) ....................9

*Philips N. Am. LLC v. Advanced Imaging Servs.*,
2023 WL 316916 (E.D. Cal. Jan. 19, 2023) ....................11

*PlayUp, Inc. v. Mintas*,
350 F.R.D. 47 (D. Nev. 2025) ....................11

*State Farm Mut. Auto. Ins. Co. v. Segal*,
2024 WL 5145911 (M.D. Fla. Dec. 17, 2024) ....................10

*Torrey v. Infectious Diseases Soc'y of Am.*,
334 F.R.D. 79 (E.D. Tex. 2019) ....................9

*Woodberry v. LeBlanc*,
2026 WL 162254 (M.D. La. Jan. 21, 2026) ....................9

## Rules

Fed. R. Civ. Proc. 53 ....................6

Fed. R. Civ. Proc. 65 ....................8

## INTRODUCTION

Plaintiff Palantir Technologies Inc. ("Palantir") respectfully requests an order requiring Defendant Joanna Cohen ("Cohen") to participate in a targeted forensic inspection and remediation protocol designed to identify, recover, and eliminate all Palantir confidential information in her possession, as set forth in pages 6 and 7 herein.

The Court has already found that "Cohen 'surreptitiously' sent herself confidential materials that she retained after her termination of employment with Palantir," and that "***subsequent investigations may reveal that Palantir property exists on additional devices or has in fact been disseminated to Percepta or others***." ECF No. 90 at 37 (emphasis added). The Court therefore directed the parties to meet and confer concerning a "method of identifying, returning, and deleting or sequestering all confidential Palantir information within Cohen's possession." *Id.* at 40. Palantir's proposed protocol implements that directive.

## BACKGROUND

### I. Palantir Initiated This Action to Remedy Cohen's Theft of Confidential Information

Palantir brought this action to protect its intellectual property and compel Cohen's compliance with her contractual obligations to Palantir after she accessed, copied, and retained confidential Palantir materials on the eve of joining a competitor. *See* ECF No. 1 ¶ 2.

At the time it filed its complaint, Palantir's own investigation had revealed that shortly before her resignation, Cohen used her laptop to access repositories containing Palantir's proprietary source code and other competitively sensitive data. *See* ECF No. 10 ("Wendt Decl.") ¶ 16. On the day Cohen resigned, she sent herself multiple confidential Palantir documents through Slack, downloading them to her personal iPhone and then deleting them from her Palantir laptop. *Id.* ¶¶ 10–12; ECF No. 11 ("Greenspan Decl.") ¶ 9; ECF No. 39 ("Jungck Decl.") ¶¶ 4-8; ECF No. 41-77 (Cohen's Deletion Logs); ECF No. 41-76 (Cohen's Slack Logs). The day after she resigned, Cohen viewed 61

confidential marketing, workflow, and sales intelligence documents—more than she had viewed in the preceding four months combined—including documents for industries in which she never worked. *See* Wendt Decl. ¶¶ 14-15; Greenspan Decl. ¶ 10.

As a result, Palantir filed a motion for a temporary restraining order seeking to temporarily enjoin Cohen from using or disclosing Palantir's confidential information and to require her to promptly return any Palantir confidential information in her possession, custody, or control. *See* ECF Nos. 6-7.

## II. Cohen Agrees to Return Palantir Confidential Information

Faced with overwhelming evidence of her theft, Cohen had no choice but to agree to a Stipulated Temporary Restraining Order. *See* ECF No. 22 (the "Stipulated TRO"). That order prohibited Cohen from using or disclosing Palantir's confidential information, required her to forensically image her devices and accounts, and mandated that she return any Palantir confidential information within her possession, custody, or control. *Id.* ¶ 1.

Following entry of the Stipulated TRO, Cohen made a production of documents which revealed that on the eve of her departure—and in a blatant effort designed to evade Palantir's exfiltration safeguards—Cohen took dozens of photos of confidential Palantir documents, capturing her laptop screen using her personal iPhone. ECF No. 76-2 ("Cohen Tr.") at 261:7-262:4; ECF No. 78 ("Jungck Supp. Decl.") ¶¶ 5-6. Only through the Court-ordered process could Palantir have uncovered this theft.

## III. Percepta and General Catalyst Refuse to Provide Any Details Concerning Their Purported "Search" for Palantir Confidential Information

To ensure that the information Cohen stole had not been disseminated to Percepta and General Catalyst, Palantir served discovery requests on these entities seeking "[a]ll Palantir Property, including but not limited to electronic Documents and Communications." ECF Nos. 8-

7, 8-8, Request No. 1. But Percepta and General Catalyst did not produce ***any*** documents or communications responsive to this request.

Palantir therefore asked multiple times for a basic description of the purported search each entity performed to locate any responsive documents. Percepta and General Catalyst refused to provide ***any*** information in response. First, they made the conclusory assertion that they "have conducted exhaustive searches for any Palantir property . . . and have found no such Palantir property stored within their systems or devices, or evidence of any use of Palantir property by any employee, former or current, of Percepta or [General Catalyst]." Ex. A (Letter from Latham dated December 18, 2025) at 2. When pressed to explain these purported searches, they simply claimed that Palantir's "***request for a detailed description of the steps Percepta and [General Catalyst] took in their internal investigations is unjustified***." Ex. B (Letter from Latham dated January 8, 2026) at 2 (emphasis added). Palantir is still in the dark about what—if anything—Percepta and General Catalyst did to search for Palantir's property, including the documents and information Palantir knows Cohen stole.

## IV. Cohen Disputes the Confidentiality of the Documents She Stole, Represents She Has Returned Everything to Palantir, and Claims Nothing Was Disseminated to Percepta or General Catalyst

Palantir filed a motion for a preliminary injunction, seeking a forensic inspection and remediation of all electronic devices and accounts that Cohen used at any time since her start date with Palantir. *See* ECF Nos. 44-45.

In her opposition to the motion, Cohen did not dispute that she took Palantir information on the eve of her departure. *See* ECF No. 70 at 40. Rather, Cohen claimed this activity was part of legitimate efforts to transition her work while still employed by Palantir. *See* ECF No. 69 ¶¶ 18–19, 23. She also claimed that ***none*** of the materials she stole constitute Palantir confidential information. *See id.* 68 ¶ 22. And she testified that she ***personally*** searched her phone for Palantir

confidential information and deleted the photographs. *Id.* ¶ 21. She then claimed she "no longer ha[d] any confidential Palantir materials in [her] possession," *id*, and that "there is zero evidence that the materials in question ever ended up in the hands of [] Percepta or anywhere else." ECF No. 70 at 40.

## V. The Court Invites Palantir to Engage In "Subsequent Investigations" to Ascertain If Its Confidential Information Has Been "Disseminated to Percepta Or Others"

The Court rejected each of the arguments Cohen advanced in an effort to justify her taking of Palantir confidential information. In its opinion and order on Palantir's motion for a preliminary injunction, the Court ruled that Cohen's excuse for engaging in the forensic activity did not "sufficiently overcome this surreptitious and anomalous behavior, establishing a likelihood that the information she sent herself or photographed has been used or disclosed or is at risk of being used or disclosed." ECF No. 90 at 36. The Court also rejected Cohen's argument that the documents she stole contained no confidential information. *Id.* at 37. Finally, the Court rejected Cohen's representation that she had returned all Palantir property and that no such information had been disseminated, holding that "***it is possible that subsequent investigations may reveal that Palantir property exists on additional devices or has in fact been disseminated to Percepta or others***." *Id.* (emphasis added).

The Court therefore enjoined Cohen from "using or disclosing any confidential information obtained from Palantir" and instructed the parties to meet-and-confer "to determine a method of identifying, returning, and deleting or sequestering all confidential Palantir information within Cohen's possession." *Id.* at 40.

## VI. Cohen Obfuscates and Delays in Providing Details Concerning Her Purported "Remediation" Efforts Pursuant to the Stipulated TRO

Palantir proposed a forensic inspection and remediation protocol on March 2. *See* Ex. C (Email Exchange between Gibson and Latham re protocol) at 15–16. Cohen rejected the proposal,

claiming that "much of what your draft seeks is duplicative of obligations already performed under the Stipulated TRO." *Id.* at 14–15.

Following Cohen's rejection, the parties held multiple video meet-and-confers and exchanged numerous emails. During these communications, Cohen acknowledged that she had access to her Percepta-issued Slack and email accounts on her personal phone but repeatedly argued that the purported "remediation" steps taken under the Stipulated TRO obviated the need for a more thorough forensic inspection and remediation process. *See id.*; *see also* DiGennaro Decl. ¶ 8. Therefore, Palantir repeatedly requested basic details concerning Cohen's purported "remediation" steps, so that it could evaluate whether the supposed remediation steps taken before the Court issued its preliminary injunction order were sufficient. *See* Ex. C at 6–8. Cohen dragged her feet; for several weeks, she failed to provide virtually any information. *See id.*

On April 10, Cohen's counsel finally responded, stating that providing information about Cohen's earlier purported remediation efforts was "not necessary to the present exercise of determining a method to secure prospective relief." *Compare* Ex. C at 15, *with* Ex. D (Letter from Latham dated April 10, 2026) at 2. Cohen nonetheless represented that her personal phone, personal email account, and personal Google Drive account had been forensically imaged and searched (through the use of highly generic and underinclusive search terms). *See* Ex. D at 1–2 & App'x 1. In addition, she represented that she searched "***her custodial emails and files from Percepta, as well as shared data sources such as company-wide Slack and Notion data***." Ex. D at 2 (emphasis added).

## VII. Palantir Proposes a Reasonable Forensic Inspection and Remediation Protocol

In an April 14 email, Palantir made a final proposal for a reasonable forensic inspection and remediation protocol, comprised of five steps:[1]

1. **Sworn Disclosure re Devices and Accounts** – Cohen will provide a sworn disclosure identifying all electronic devices acquired for Cohen's personal use ("Cohen Devices") and all electronic repositories of data created by Cohen for her personal use or issued to Cohen by Percepta that are accessible on any Cohen Devices ("Cohen Accounts") that have been used by her at any time from August 2020 through the present. Cohen will also explain the timing and circumstances surrounding the loss or destruction of any Cohen Device or Cohen Account no longer in her possession, custody, or control. Finally, Cohen will identify all hard-copy documents in her possession, custody, or control that she obtained through her employment at Palantir ("Hard-Copy Documents").

2. **Surrender of Control and Forensic Imaging** – Cohen will cooperate in the surrender of all Cohen Devices, Cohen Accounts, and Hard-Copy Documents to a forensic investigation firm selected by Palantir at its sole discretion (with the cost of such forensic investigation firm to be split equally among the parties) and will not access the data stored on any surrendered Cohen Devices or Cohen Accounts through the use of electronic backups until the forensic remediation process is complete. The forensic investigation firm will retain control over the Cohen Devices, Cohen Accounts, and Hard-Copy Documents until the forensic remediation process is complete. The forensic investigation firm will create forensically sound images of the Cohen Devices and Cohen Accounts (the "New Images"). For the avoidance of doubt, this paragraph shall apply to the entirety of any Cohen Accounts issued to Cohen by Percepta that are accessible on any Cohen Devices and will not be limited to only the data accessible on the Cohen Devices from such Cohen Accounts.

3. **Search Terms** – The parties will make proposals for search terms to be run on all data contained within the New Images of the Cohen Devices and Cohen Accounts as well as the original forensic images created during the remediation effort pursuant to the Stipulated TRO (the "Original Images"). The forensic investigation firm will provide the parties with hit reports for their respective proposals. The parties will meet-and-confer regarding their respective proposals in an effort to reach an agreement on the search terms to be run on all data contained within the

[1] Palantir also agreed to accommodate a proposal from Cohen to "sequence" the forensic remediation process by initially focusing on certain devices and accounts while reserving Palantir's right to expand the remediation to additional devices and accounts if needed. *See* Ex. C at 3.

New Images and the Original Images. If the parties are unable to reach an agreement with respect to certain search terms, they will raise their respective proposals to the Court or a master appointed pursuant to FRCP 53 (together, the "Court") for resolution. The forensic investigation firm will also run searches on all data contained within the New Images and the Original Images for the image/file names and file hash IDs for each of the materials identified in Cohen's November 14, 2025 Response to Palantir's Interrogatory No. 1. The data identified pursuant to this paragraph is collectively referred to as the "Hits."

4. **Review of Hits** – Counsel for Cohen will review the Hits for privileged documents, which will not be shared with counsel for Palantir (but a privilege log will be shared). All other Hits and copies of Hard-Copy Documents will be shared with counsel for Palantir on an AEO-basis. The parties will meet-and-confer regarding which Hits and Hard-Copy Documents contain Palantir confidential information and which Hits and Hard-Copy Documents are personal to Cohen. If the parties are unable to reach an agreement with respect to certain Hits or Hard-Copy Documents, they will raise their respective proposals to the Court for resolution.

5. **Deletion and Return of Control** – The forensic investigation firm will permanently forensically delete all Hits that contain Palantir confidential information (as agreed by the parties or as determined by the Court) from the Cohen Devices and Cohen Accounts. Following this permanent forensic deletion, the forensic investigation firm will return control of the Cohen Devices and Cohen Accounts to Cohen. Palantir will retain all Hits and Hard-Copy Documents that contain Palantir confidential information (as agreed by the parties or as determined by the Court) as well as any and all metadata concerning such Hits or concerning each of the materials identified in Cohen's November 14, 2025 Response to Palantir's Interrogatory No. 1, including but not limited to file name, file type, and usage history (such as all metadata concerning the file's creation, access, modification, deletion, printing, emailing, saving to any external storage devices or cloud storage accounts, and/or dissemination from any external storage devices or cloud storage accounts), provided, however, that counsel for Palantir will delete all Hits and return all Hard-Copy Documents to Cohen that do not contain Palantir confidential information (as agreed by the parties or as determined by the Court). The forensic investigation firm will retain the New Images and the Original Images for evidence preservation purposes.

Ex. C at 3–5.

On April 17, Cohen rejected four key aspects of this proposal. First, Cohen objected to the protocol including accounts issued to her by Percepta that are accessible on her personal

devices. *Id.* at 1. Second, Cohen contended that Palantir's counsel should not have access to the Hits and that only her counsel should review those documents. *Id* at 2. Third, Cohen argued that the search terms should not be applied to the Original Images. *Id*. And fourth, Cohen demanded she retain access to all of her devices and accounts throughout the forensic inspection and remediation process. *Id.* at 1–2.

**ARGUMENT**

The Court should enter Palantir's reasonable forensic inspection and remediation protocol. *See, e.g.*, *Mphasis Corp. v. Rojas*, 2025 WL 1640384, at *1 (S.D.N.Y. June 9, 2025) (ordering a forensic examination in connection with a preliminary injunction). Palantir proposed a reasonable forensic inspection and remediation protocol that will provide clarity concerning Cohen's retention and dissemination of Palantir's confidential information while affording appropriate protections for Cohen's privileged and personal data. By contrast, Cohen's counterproposal will materially increase the risk of further use or disclosure of Palantir's confidential information. The Court should order Cohen to participate in Palantir's proposed protocol.

## I. Percepta-Issued Accounts Accessible on Cohen's Personal Phone

Percepta-issued accounts accessible on Cohen's personal devices are the most likely means by which Palantir's confidential information has been disseminated to Percepta or General Catalyst. Cohen's only argument for why these accounts should not be investigated is that they supposedly are not "within the scope of the Court's preliminary injunction order." Ex. C at 1. This argument fails for three key reasons.

*First*, the Court explicitly invited Palantir to engage in "***subsequent investigations***" to determine if "***Palantir property exists on additional devices or has in fact been disseminated to Percepta or others***." ECF 90 at 37 (emphasis added). It would be inconsistent with both the letter

and the spirit of this ruling if Percepta-issued accounts accessible on Cohen's personal devices are not part of the protocol. Palantir cannot ascertain whether its confidential information has been disseminated to Percepta or General Catalyst without such accounts being subject to inspection and remediation. And given Percepta and General Catalyst's outright refusal to provide ***any*** information concerning their purported "search" for Palantir confidential information in response to the subpoenas, it is critical that Percepta-issued accounts on Cohen's personal devices be included within the protocol.

*Second*, Cohen has already conceded that her Percepta-issued accounts are within her possession, and thus, they are subject to the Court's preliminary injunction order. The Stipulated TRO required Cohen to "return to Palantir all items containing or embodying Palantir Property within Defendants' ***possession***." Stipulated TRO ¶ 1 (emphasis added). Cohen has represented that, in meeting this obligation, she forensically imaged and searched "***her custodial emails and files from Percepta, as well as shared data sources such as company-wide Slack and Notion data***." Ex. D at 2 (emphasis added). The preliminary injunction order mirrors the Stipulated TRO insofar as it contemplates "a method of identifying, returning, and deleting or sequestering all confidential Palantir information within Cohen's ***possession***." ECF No. 90 at 40 (emphasis added). If Cohen's Percepta emails, files, Slacks, and Notion data were within her "possession" under the Stipulated TRO, then they are equally within her "possession" under the preliminary injunction order.[2]

*Third*, numerous courts have recognized that employees have possession of their work accounts for purposes of discovery. *See, e.g.*, *Getachew v. L&S Invs., LLC*, 2026 WL 412526, at *6–7 (D. Conn. Feb. 13, 2026) (immunizing work accounts from discovery would "create an

[2] To be clear, Palantir's proposed forensic inspection and remediation protocol does not apply to all of Cohen's Percepta-issued devices and accounts, but rather, only those that are accessible on her personal devices.

incentive to a party to use their work email address to send or receive communications they do not want discovered"); *Gross v. Lundski*, 304 F.R.D. 136, 144 (W.D.N.Y. 2014) (employees had the "practical ability" to produce documents within their employer's custody); *Torrey v. Infectious Diseases Soc'y of Am.*, 334 F.R.D. 79, 85-86 (E.D. Tex. 2019) (employees had to produce work emails that were, among other things, searchable and downloadable "on their personal devices"); *Woodberry v. LeBlanc*, 2026 WL 162254, at *10 (M.D. La. Jan. 21, 2026) (requiring defendants to search their "work email account[s]"); *OL Priv. Couns., LLC v. Olson*, 2022 WL 16574308, at *3 (D. Utah Nov. 1, 2022) ("[C]ontention that [individual] does not have possession, custody, or control of emails from his oltax.com account is unpersuasive."). Again, if Cohen's Percepta accounts were within her "possession" for purposes of the Stipulated TRO, they are equally within her possession for purposes of the preliminary injunction and should be included as part of a remediation protocol. *Cf. State Farm Mut. Auto. Ins. Co. v. Segal*, 2024 WL 5145911, at *2 n.2 (M.D. Fla. Dec. 17, 2024) ("[T]he Court confirms that Defendant's work email and personal email are both subject to forensic examination.").

## II. Review by Palantir's Counsel

Palantir's counsel must be permitted to review all Hits to ensure that any disagreements as to what constitutes "Palantir confidential information" are not left to the sole discretion of Cohen's counsel. Cohen claims that "Latham attorneys are best-placed to conduct the review at issue, particularly given the sensitive personal nature of the devices and accounts in question." Ex. C at 1. This is wrong.

The Court's rejection of Cohen's view as to what constitutes "Palantir confidential information" confirms that this determination should not be left to the sole discretion of her counsel. The parties disagree about what constitutes "Palantir confidential information," exemplified in Cohen's lengthy declaration claiming that the dozens of Palantir documents she photographed on

her personal phone were not actually confidential. *See* ECF No. 69 ¶ 22. The Court rejected Cohen's testimony—and, therefore, agreed with Palantir in that dispute about what constitutes Palantir confidential information. *See* ECF No. 90 at 37. This raises legitimate concerns for Palantir about Cohen's counsel's ability to determine what is in fact confidential Palantir information. This is not meant in any way to be a criticism of or attack on Cohen's counsel. This is about the inherent reality that Palantir is not their client and, therefore, they do not necessarily have insight into what is or is not confidential information belonging to Palantir. If Cohen's counsel is solely responsible for conducting the review of the Hits, there will be no way to verify whether they failed to identify and return documents that both Palantir and the Court would characterize as "Palantir confidential information" based on Cohen's unduly narrow and already-rejected definition.

Any purported concerns about "the sensitive personal nature of the devices and accounts in question," Ex. C at 1, are addressed by Palantir's proposed protocol because it allows Cohen's counsel to review all of the Hits ***first*** to ensure that no privileged material is disclosed. And even the non-privileged Hits that are disclosed will only be shared with Palantir's counsel on an "Attorneys' Eyes Only" basis. When these types of protections are in place, courts routinely rule that both sides should have the opportunity to review the hits on agreed-upon search terms. *See, e.g.*, *Benthos Master Fund, Ltd. v. Etra*, 2023 WL 8275920, at *2 (S.D.N.Y. Nov. 30, 2023) (ordering forensic expert to "produce to [plaintiff] all emails sent to or received from" certain email accounts following defendant's review for privilege); *GEP Admin. Servs., LLC v. Wiseman*, 2024 WL 5454570, at *5 (M.D. Tenn. June 11, 2024) ("Ultimately, Defendants has provided no explanation as to why only Defendant's counsel should get to conduct a review, and the Court finds it unreasonable to allow a one-sided review process when Defendant has previously

submitted to Plaintiff an inadequate forensic examination of her own."); *Philips N. Am. LLC v. Advanced Imaging Servs.*, 2023 WL 316916, at *4 (E.D. Cal. Jan. 19, 2023) (ordering that a "full forensic copy" of the relevant computer "be made available to both plaintiff's counsel and defendants' counsel")[3]; *PlayUp, Inc. v. Mintas*, 350 F.R.D. 47, 61 (D. Nev. 2025) (ordering production of "all non-privileged documents received from the examiner"); *HP Tuners, LLC v. Cannata*, 2020 WL 4905533, at *3 (D. Nev. Aug. 20, 2020) ("Defendant shall produce . . . all Communications and Documents recovered by the Forensic Examiner, which are not identified on the [Privilege] Logs.").

## III. Application of Search Terms to the Original Images

The search terms should be applied to the Original Images (in addition to the New Images) to identify any Palantir confidential information that was previously stored within and disseminated from Cohen Devices or Cohen Accounts but that was deleted prior to the creation of the New Images. Cohen argues that the Court's order does not "require[] re-imaging or additional review with respect to materials from the PI phase of the proceedings." Ex. C at 1. We believe this is incorrect.

Again, the Court explicitly invited Palantir to engage in "***subsequent investigations***" to determine if "***Palantir property exists on additional devices or has in fact been disseminated to Percepta or others***." ECF 90 at 37 (emphasis added). In other words, the Court ordered that Palantir should have the opportunity to identify other data repositories that may also be retaining its confidential information. Given Cohen's history of "surreptitious" behavior, it is plausible that she disseminated Palantir confidential information from her personal phone to other devices and

---

[3] The court allowed defendants to exclude only privileged documents from the produced images. *See* Motion for Sanctions at 6-7, *Philips N. Am. LLC v. Advanced Imaging Servs.*, No. 2:21-CV-00876 DAD AC (E.D. Cal. Sep. 22, 2023), ECF No. 221.

accounts and then deleted that information from her personal phone to cover her tracks. In fact, Cohen did exactly that with respect to the confidential documents she sent to herself through Slack and then deleted from her work laptop. *See* ECF No. 41-77 (Cohen's Deletion Logs) and ECF No. 41-76 (Cohen's Slack Logs).

If the search terms are applied to the Original Images, Palantir will be able to identify deleted confidential information, and through the metadata associated with that information, determine where else it has been disseminated. But if the search terms are applied only to the New Images—as Cohen advocates—it would allow potential spoliation to go undetected because Palantir will never know what additional confidential information she stole and where else she hid it. Palantir should not be required to accept such a loophole.

## IV. Cohen's Control Over the Cohen Devices and Cohen Accounts

Finally, Cohen should not be permitted to retain control over the Cohen Devices and Cohen Accounts during the process because it will allow for the further dissemination of Palantir confidential information outside the scope of the protocol. Cohen has not offered any rationale for why she must retain such control because there is none.

If Cohen is permitted to retain control over the Cohen Devices and Cohen Accounts, it is entirely plausible that following creation of the New Images, she will disseminate Palantir confidential information to new devices and accounts. Because that dissemination will take place *after* creation of the New Images, the New Images will not contain any metadata reflecting that dissemination. Again, this creates another loophole. If the protocol is to accomplish its goal of removing any Palantir confidential information from Cohen's possession, then she must relinquish control of the Cohen Devices and Cohen Accounts while the remediation process plays out.

Palantir has proposed an inherently reasonable protocol and remediation plan in response to the findings of this Court. Palantir has every interest in conducting this effort swiftly and efficiently—and vows to do so, if ordered by the Court. Cohen will have her devices back promptly.

**CONCLUSION**

For all these reasons, Palantir respectfully requests that the Court order Cohen to participate in Palantir's proposed forensic inspection and remediation protocol as set forth in pages 6 and 7 herein.

Dated: May 5, 2026

**GIBSON, DUNN & CRUTCHER LLP**

By: *_/s/ Harris M. Mufson_*

Harris M. Mufson
Ilissa Samplin
Justin M. DiGennaro
Zachary A. Schreiber

GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166-0193
Telephone: 212-351-4000
hmufson@gibsondunn.com
jdigennaro@gibsondunn.com
zschreiber@gibsondunn.com

GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: 213-229-7000
isamplin@gibsondunn.com

*Attorneys for Palantir Technologie, Inc.*

**WORD COUNT CERTIFICATION**

I, Harris M. Mufson, an attorney duly admitted to practice law before this Court, hereby certify that this memorandum of law complies with the word limit set forth in the Local Rule 7.1(c) because it contains no more than 4,341 words, excluding the parts of the motion exempted from the word limit by Local Civil Rule 7.1. In preparing this certification, I have relied on the word count of the word-processing system used to prepare this memorandum of law.

Dated: May 5, 2026

By: */s/ Harris M. Mufson*

Harris M. Mufson