**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

PALANTIR TECHNOLOGIES INC.,

Plaintiff,

v.

HIRSH JAIN, RADHA JAIN, and JOANNA
COHEN,

Defendants.

---

Case No. 1:25-cv-08985-JPO

**ORAL ARGUMENT REQUESTED**

---

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR AN ORDER
ENTERING A FORENSIC INSPECTION AND REMEDIATION PROTOCOL**

**LATHAM & WATKINS LLP**

Steven N. Feldman
Sarah Burack
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1200
Facsimile: (212) 751-4864

Marja-Liisa Overbeck (*pro hac vice*)
505 Montgomery Street, Suite 2000
San Francisco, CA 94111-6538
Telephone: (415) 391-0600
Facsimile: (415) 395-8095

Jordan Hughes (*pro hac vice*)
555 Eleventh Street, NW Suite 1000
Washington, D.C. 20004-1304
Telephone: (202) 637-2200
Facsimile: (202) 637-2201

*Attorneys for Hirsh Jain, Radha Jain,
 and Joanna Cohen*

**TABLE OF CONTENTS**

I.     PRELIMINARY STATEMENT ......................................................................1

II.    BACKGROUND ..........................................................................................2

III.   ARGUMENT................................................................................................6

      A.   Palantir's Attempted End-Run Around Traditional Discovery Rules Should Be Rejected. .............................................................................7

      B.   Review By Joanna's Counsel Balances Palantir's Needs Against The Intrusiveness Of Its Request. ...............................................................10

      C.   Palantir's Requested Re-Review Of Prior Images Is Duplicative And Unnecessary.....................................................................................12

      D.   Palantir Cannot Justify Depriving Joanna Ongoing Access To Her Devices and Accounts. .....................................................................13

IV.    CONCLUSION ........................................................................................15

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Advante Int'l Corp. v. Mintel Learning Tech.*,
2006 WL 1806151 (N.D. Cal. June 29, 2006) ...................................................................2, 11, 12

*Chevron Corp. v. Donziger*,
425 F. Supp. 3d 297 (S.D.N.Y. 2019) .................................................................................11, 12

*Genworth Fin. Wealth Mgmt., Inc. v. McMullan*,
267 F.R.D. 443 (D. Conn. 2010) ...............................................................................................11

*GEP Administrative Services, LLC v. Wiseman*,
2024 WL 5454570 (M.D. Tenn. June 11, 2024) ........................................................................14

*Getachew v. L&S Investments, LLC*,
2026 WL 412526 (D. Conn. Feb. 13, 2026) ...............................................................................8

*Gilead Scis., Inc. v. Khaim*,
755 F. Supp. 3d 285 (E.D.N.Y. 2024) .........................................................................................9

*Harty v. Spring Valley Marketplace LLC*,
2017 WL 108062 (S.D.N.Y. Jan. 9, 2017) ................................................................................13

*HP Tuners, LLC v. Cannata*,
2020 WL 4905533 (D. Nev. Aug. 20, 2020) .............................................................................11

*Lamb v. Money Transfer Sys., Inc.*,
2013 WL 5216442 (W.D.N.Y. Sept. 16, 2013) ..........................................................................7

*Lebenns v. Frost Prods.*,
2023 WL 8280405 (S.D.N.Y. Nov. 30, 2023) .............................................................................9

*OL Priv. Couns., LLC v. Olson*,
2022 WL 16574308 (D. Utah Nov. 1, 2022) ...............................................................................8

*Paramed. Electromed. Com., Ltda. v. GE Med. Sys. Info. Techs., Inc.*,
369 F.3d 645 (2d Cir. 2004) ......................................................................................................14

*Philips N. Am. LLC v. Advanced Imaging Servs.*,
2023 WL 316916 (E.D. Cal. Jan. 19, 2023) ..............................................................................11

*PlayUp, Inc. v. Mintas*,
350 F.R.D. 47 (D. Nev. 2025) ....................................................................................................11

*Raleigh v. Baribault*,
  2024 WL 4524101 (D. Conn. Oct. 18, 2024) ...........................................................................12

*Tucker v. Am. Int'l Grp., Inc.*,
  281 F.R.D. 85 (D. Conn. 2012)...............................................................................8, 9, 12

## STATUTES

18 U.S.C. § 401...........................................................................................................................14

## RULES

Fed. R. Civ. P.
  26(b)(2)(C)...........................................................................................................................8, 9
  26(b)(2)(C)(i) ....................................................................................................................12, 13
  34(a) .........................................................................................................................................9
  45(d)(3)(B)(i) ...........................................................................................................................9

## I.    PRELIMINARY STATEMENT[1]

In its preliminary injunction order, this Court directed the parties "to meet and confer to determine a method of identifying, returning, and deleting or sequestering all confidential Palantir information" within Defendant Joanna Cohen's possession.  Dkt. 90 ("Order") at 40.  Joanna has complied with that directive in good faith, engaging in extensive meet-and-confers and offering a detailed protocol that would satisfy any legitimate remediation concerns while protecting her privacy interests and the interests of third parties.  Rather than work to reach a compromise, Palantir filed the pending motion seeking intrusive, far-reaching relief that the Court already declined to grant in connection with its Order: an expedition through Joanna's personal data and non-party Percepta AI LLC's confidential business information, in circumvention of traditional discovery rules, and far beyond anything necessary to ensure compliance with the entered injunction.[2]

Indeed, Palantir's requested protocol far exceeds what is necessary or permitted under relevant rules or Palantir's own cited authority.  Specifically, it would: (i) compel inspection of information belonging to Percepta, a third party, in circumvention of the Federal Rules governing third-party discovery; (ii) unnecessarily expose Joanna's sensitive data to Palantir's counsel when hers are able to conduct a thorough review; (iii) require duplicative re-review of forensic images already searched during the preliminary injunction phase; and (iv) deprive Joanna of access to her devices and accounts during the process, sidelining her from work and disrupting her daily life.

---

[1] Unless otherwise noted, emphases are added and internal citations, alterations, and quotations are omitted.

[2] The inappropriateness of Palantir's requests is only underscored by the fact that this Court has now stayed this case pending arbitration, Dkt. 112, making Palantir's effort to use this action as a vehicle for searching through third parties' information all the more unjustified.

Dkt. 110 (Mot. at 6–7).  None of these requests is justified by the record or required under the Court's Order.

The Court should deny Palantir's Motion and endorse Joanna's proposal.  Under it, she would provide a sworn disclosure of her personal devices and accounts, surrender them for forensic imaging by a neutral vendor, agree to search terms developed collaboratively with Palantir, and have her counsel review the results for responsiveness and privilege before production (and eventual deletion).  This procedure adequately addresses any legitimate concerns about Palantir's confidential information while respecting Joanna's privacy and the interests of uninvolved third parties—just the sort of "appropriate . . . compromise" courts routinely embrace.  *Advante Int'l Corp. v. Mintel Learning Tech.*, 2006 WL 1806151, at *1–2 (N.D. Cal. June 29, 2006)

## II.    BACKGROUND

A brief review of the factual record is warranted to correct any misconceptions created by Palantir's selective recitation.

In October 2025—without warning, notice, or any opportunity to resolve this dispute outside of litigation or arbitration—Palantir initiated this action, alleging that Joanna exfiltrated confidential information from Palantir upon her separation from the company in March 2025.  *See* Dkt. 1 (Compl. ¶ 117); *see also* Dkt. 33 (Am. Compl. ¶ 231).  Without admitting any wrongdoing, Joanna immediately stipulated to a temporary restraining order under which she agreed, among other things, to (i) promptly forensically image the devices in her possession that she used to perform work at Palantir; (ii) return any Palantir materials and then delete them post-imaging; (iii) refrain from using or disclosing Palantir information, if any, in her possession; and (iv) be placed on "garden leave" pending resolution of Palantir's motion for a preliminary injunction.  *See* Dkt. 22 (TRO ¶ 1).  Simultaneously, Percepta agreed to respond to a subpoena issued to it by

Palantir, to produce documents subject to a protective order, and to appear for a deposition. TRO ¶ 5.

In the months that followed, Joanna and Percepta complied with these obligations and engaged in expedited discovery with Palantir. Joanna's iPhone—which she used at Palantir under the company's hybrid device policy—was forensically imaged by an outside vendor on November 4, 2025, and searched, and her personal email account and Google Drive materials were collected and analyzed as well. Dkt. 111-4 (Ex. D at 2–4). Likewise, Percepta responded to Palantir's subpoena, producing documents and representing with respect to Palantir's request for "All Palantir Property, including but not limited to electronic Documents and Communications" that after "a reasonable, good faith search [they] ha[d] not identified any materials responsive to th[e] Request." Dkt. 61-16 (Percepta Subpoena Resp.); *see also* Dkt. 61-15 (General Catalyst Subpoena Resp.).

This discovery revealed that Joanna had inadvertently retained certain Palantir information on her iPhone. *See* Dkt. 69 (Cohen Decl. ¶¶ 21, 23). Specifically, Joanna took a series of photos of certain Palantir materials a week before she left the company to help her complete tasks during her offboarding and while in transit. Cohen Dep. 261:7–265:21, 271:16–273:14. She has never used them since leaving Palantir and quickly forgot the files existed. Cohen Dep. 267:20–269:21, 273:15–21; Cohen Decl. ¶¶ 23, 29.[3]

After producing these documents to Palantir, and in compliance with her obligations under the stipulated temporary restraining order, Joanna then deleted all Palantir information from her

---

[3] Evidence suggested that Joanna also Slacked herself certain documents she photographed as part of her practice of using Slack as a running to-do list, sending herself documents that she needed to read or reference. Cohen Dep. 296:8–297:3; 324:11–18. Nevertheless, none of these documents was found on her phone following its forensic image and search. *See* Dkt. 62 (Feldman Decl. ¶ 13).

3

iPhone.  Cohen Decl. ¶ 21.  Although Joanna argued that Palantir's request for injunctive relief on her employment agreement's confidentiality and return-of-property provisions was moot following her deletion of Palantir's information, the Court enjoined Joanna from "using or disclosing any confidential information obtained from Palantir" and ordered Joanna and Palantir to "meet and confer [within fourteen days] to determine a method of identifying, returning, and deleting or sequestering all confidential Palantir information within Cohen's possession."  Order at 40.  Palantir had sought far more extensive discovery from Joanna as part of its motion.[4]  The Court rejected those requests, stating simply that "Palantir's motion is denied in all other respects."  Order at 41.

Palantir has largely dragged its feet since the Court's February 18, 2026 Order.  It waited until the fourteenth day to reach out to Joanna to meet and confer regarding any further efforts to confirm that no Palantir confidential information remained in her possession.  Dkt. 111-3 (Ex. C at 16–17).[5]  Joanna responded immediately.  Ex. C at 15–16.  A month's worth of correspondence and teleconferences followed, Ex. C., which included Joanna's thorough, written response to Palantir's questions regarding her remediation efforts undertaken to comply with the stipulated temporary restraining order, Ex. D.  Then, on April 14, 2026, Palantir shared its "final proposal"

---

[4] Among other discovery requests, Palantir sought an order directing Joanna to "[u]ndertake a forensic inspection and remediation of all electronic devices and virtual repositories or services that may be used to store or transmit electronic documents or information and that have been used by her at any time since August 3, 2020," including, without limitation, "all laptops, tablets, cellular devices, and all physical storage devices such as external hard drives or jump drives" and "all personal email accounts and messaging accounts such as WhatsApp, Facebook Messenger, WeChat, Snapchat, Telegram, Viber, LINE, Signal, Discord, and Skype; and all cloud-based storage or file sharing accounts such as Google drives or Google Docs, OneDrive, iCloud, DropBox, Box.com, and Sharefile."  Dkt. 45 (Palantir's Proposed Order ¶ 5).

[5] For clarity, this memorandum refers to the PDF file page numbers when citing Exhibit C.

for a forensic remediation protocol, threatening to file a motion if Joanna did not agree to it wholesale. Ex. C at 4–6; Mot. at 6–7.

Joanna responded on April 17, 2026, explaining in detail why she could not agree to the proposal and offering to continue discussing the outstanding issues. Ex. C at 2–3. Specifically, she explained that:

- "Latham attorneys are best-placed to conduct the review at issue, particularly given the sensitive personal nature of the devices and accounts in question and the invariable occurrence of false positive results";

- It would not be "appropriate for Palantir's counsel to review any and all hits that may result from the negotiated search terms";

- "[A]ccounts issued to or accessible by Ms. Cohen from Percepta are [not] appropriately within the scope of the Court's preliminary injunction [O]rder"; and

- "[T]he [O]rder [does not] require[] reimaging or additional review with respect to materials from the PI phase of the proceedings."

Ex. C at 2.

To address these concerns, Joanna offered the following reasonable modifications to Palantir's proposal:

- **Sworn Disclosure re Devices and Accounts** – Ms. Cohen will provide a sworn disclosure identifying all electronic devices acquired for Ms. Cohen's personal use ("Cohen Devices") and all electronic repositories of data created by Ms. Cohen for her personal use ("Cohen Accounts") that have been used by her at any time from August 2020 through the present. Ms. Cohen will also explain the timing and circumstances surrounding the loss or destruction of any Cohen Device or Cohen Account no longer in her possession, custody, or control. Finally, Ms. Cohen will identify all hard-copy documents in her possession, custody, or control that she obtained through her employment at Palantir ("Hard-Copy Documents").

- **Surrender of Control and Forensic Imaging** – Ms. Cohen will cooperate in the surrender of all Cohen Devices, Cohen Accounts, and Hard-Copy Documents to a forensic investigation firm selected by Palantir at its sole discretion (with the cost of such forensic investigation firm to be split equally among the parties). The forensic investigation firm will create forensically sound images of the Cohen Devices and Cohen Accounts (the "New Images").

5

- **Search Terms** – The parties will make proposals for search terms to be run on all data contained within the New Images.  The forensic investigation firm will provide the parties with hit reports for their respective proposals.  The parties will meet-and-confer regarding their respective proposals in an effort to reach an agreement on the search terms to be run on all data contained within the New Images and the Original Images.  If the parties are unable to reach an agreement with respect to certain search terms, they will raise their respective proposals to Judge Oetken or a master appointed pursuant to FRCP 53 (together, the "Court") for resolution.  The forensic investigation firm will also run searches on all data contained within the New Images for the image/file names and file hash IDs for each of the materials identified in Ms. Cohen's November 14, 2025 Response to Palantir's Interrogatory No. 1.  The data identified pursuant to this paragraph is collectively referred to as the "Hits."

- **Review of Hits** – Counsel for Ms. Cohen will review the Hits for responsive documents, which will be shared with Palantir on an AEO-basis as set forth in the stipulated Protective Order (Dkt. 29).  Counsel for Ms. Cohen will identify (but not produce) any responsive, privileged documents on a privilege log.

- **Deletion and Return of Control** – The forensic investigation firm will permanently forensically delete all Hits that contain Palantir confidential information (as agreed by the parties or as determined by the Court) from the Cohen Devices and Cohen Accounts.  Palantir will retain all responsive hits and Hard-Copy Documents that contain Palantir confidential information (as agreed by the parties or as determined by the Court) as well as any and all metadata concerning such Hits or concerning each of the materials identified in Ms. Cohen's November 14, 2025 Response to Palantir's Interrogatory No. 1 including but not limited to file name, file type, and usage history (such as all metadata concerning the file's creation, access, modification, deletion, printing, emailing, saving to any external storage devices or cloud storage accounts, and/or dissemination from any external storage devices or cloud storage accounts).  The forensic investigation firm will retain the New Images for evidence preservation purposes.

Ex. C at 2–3 (cleaned up).

Palantir did not respond to this counterproposal.  Instead, after over two more weeks of delay, it filed the present motion.  Mot. at 1.

## III.    ARGUMENT

Palantir has proposed a far-reaching and overly intrusive forensic imaging and remediation protocol that (i) fails to respect third-party privacy, (ii) disregards traditional discovery rules, (iii) duplicates efforts, and (iv) unnecessarily deprives Joanna of essential tools for her daily life and

6

work.  In response, Joanna has offered reasonable alternatives, consistent with the Court's directive "to determine a method of identifying, returning, and deleting or sequestering all confidential Palantir information within [Joanna]'s possession."  Order at 40.  Palantir ignored Joanna's counterproposal, but the Court should not.  For the reasons that follow, Palantir's motion should be denied, and the Court should instead adopt Joanna's counterproposal as set forth in Exhibit C at 2–3.

### A.    Palantir's Attempted End-Run Around Traditional Discovery Rules Should Be Rejected.

Palantir seeks overly broad and intrusive access to accounts and data owned by Percepta— which is not a party to this litigation—in contravention of both the Court's recent order staying this action as well as traditional discovery rules.  Palantir's request to search through third-party data under the guise of "forensic remediation" should be denied for the following three reasons.

*First*, in its discussion of Joanna's "possession" of her work accounts, Mot. at 9–10, Palantir fights a straw man.  Whether Joanna possesses these accounts or not, the data belongs to Percepta, and the company has protectable privacy interests in it.  Fed. Rs. Civ. P. 26(b)(2), 34(c), 45(d); *see Lamb v. Money Transfer Sys., Inc.*, 2013 WL 5216442, at *15 (W.D.N.Y. Sept. 16, 2013) ("[I]t is axiomatic that materials or products developed by an employee in the course of his or her employment, absent any agreement to the contrary, belong to his or her employer.").  The fact that Joanna happens to access her Percepta-issued work accounts on her personal phone—a hybrid arrangement that is ubiquitous in the modern workplace, including at Palantir—does not entitle Palantir to bootstrap its way into Percepta's proprietary systems and data.  The Court should reject this obvious attempt to bypass traditional discovery procedures, particularly now that this case—and all such discovery—has been stayed.

*Second*, Palantir's request with respect to Percepta's data unnecessarily retreads old ground.  Contrary to Palantir's suggestion that Percepta has refused to provide any information regarding its searches, Mot. at 9, Percepta has repeatedly explained that it has searched its internal systems (including *all* of its Slack and Notion data) and found no Palantir information.  *See* Ex. D at 4.  In addition, as Palantir explicitly acknowledges, Mot. at 9, undersigned counsel ran (and asked an outside vendor to run) searches across Joanna's phone and email data for evidence that she disseminated the photographs found during this litigation to anyone else—at Percepta or otherwise.  ***The results of those searches were also negative***.  *See* Ex. D.[6]  Disappointed by the lack of evidence to substantiate its unfounded beliefs, Palantir effectively asks to run the searches again, but this time for it to oversee.  There is no reason to do so, and this Court should "refrain from ordering *yet another* broad and costly search of [Percepta]'s computer records . . . in search of [evidence] which may not exist."  *Tucker v. Am. Int'l Grp., Inc.*, 281 F.R.D. 85, 96 (D. Conn. 2012).

*Third*, Palantir's request is overly broad, particularly given that it is based solely on Palantir's unsubstantiated belief that Joanna sent or uploaded Palantir confidential information to Percepta's systems.[7]  Order at 17 (noting "there is no evidence that either Percepta or GC is in possession of any Palantir materials").  Under Rule 26(b)(2)(C), courts balance parties' interests— including those of third parties—to determine whether discovery, even if relevant, should be

---

[6] The vendor's search results show that Joanna sent to her husband one screenshot of a Slack message exchange she had regarding when she would need to return her Palantir laptop.  *See* Dkt. 115 (LaGuardia Decl.); Cohen Dep. 131:15–17 (identifying Joanna's husband).

[7] Palantir's own cases are of accord.  For example, in *Getachew v. L&S Investments, LLC*, the court permitted discovery of the plaintiff's work emails only after a showing that "the plaintiff used his [work] email address for personal reasons related to this dispute."  2026 WL 412526, at *4, 6–7 (D. Conn. Feb. 13, 2026); *see also OL Priv. Couns., LLC v. Olson*, 2022 WL 16574308, at *3 (D. Utah Nov. 1, 2022) (similar).  The court differentiated other cases in which parties sought non-parties' business data.  *Id.*

allowed to proceed.  *See* Fed. R. Civ. P. 26(b)(2)(C); *Tucker*, 281 F.R.D. at 92 (explaining that third parties' interests should be considered under Rule 26(b)(2)(C)'s balancing test as well).  The Advisory Committee Notes to Rule 34 instruct that "[c]ourts should guard against undue intrusiveness resulting from inspecting or testing [electronic information] systems."  Fed. R. Civ. P. 34(a) advisory committee's note to 2006 amendment.  And Rule 45 provides even more protection to third parties, preventing them from being required to disclose their "confidential . . . commercial information."  Fed. R. Civ. P. 45(d)(3)(B)(i).

By seeking to review "***the entirety*** of any Cohen Accounts issued to Cohen by Percepta that are accessible on any Cohen Devices," Mot. at 6, Palantir's request "will invariably produce scores of data not relevant to any aspect of [its] suit," *Gilead Scis., Inc. v. Khaim*, 755 F. Supp. 3d 285, 297 (E.D.N.Y. 2024).  Joanna has agreed to work with Palantir to run search terms across the imaged data.  *See* Ex. C at 2–3.  But even the most precise search terms invariably carry a risk of "false positive" hits.  *See Tucker*, 281 F.R.D. at 97 (noting the privacy concerns attendant to forensic imaging).  Palantir's proposed protocol unnecessarily exposes Percepta's proprietary business information, and courts are loath to endorse such fishing expeditions.  *Gilead*, 755 F. Supp. 3d at 297–98 (collecting cases); *Tucker*, 281 F.R.D. at 94–95, 97 (same).

Joanna has suggested a reasonable alternative.  Ex. C at 2–3.  Joanna will surrender her personal devices and accounts for imaging, but not those issued by Percepta.  Ex. C at 2–3.  If that imaging reveals evidence that Joanna disseminated Palantir's confidential information, the parties can then meet and confer about further searches, including searches of Percepta data.  *See* Mot. at 6 n.1 (noting Palantir's agreement to sequenced review).  "In the absence of *proven* necessity," however, Palantir's overly broad request for access to Joanna's Percepta-issued accounts should

be denied. *Tucker*, 281 F.R.D. at 95; *see also Lebenns v. Frost Prods.*, 2023 WL 8280405, at \*3–4 (S.D.N.Y. Nov. 30, 2023) (denying a request to forensically image a non-party's computer).

Contrary to Palantir's assertions, this Court did not "invite" it to conduct overly broad or duplicative subsequent investigations of Percepta data to fish for evidence to support its claims. The Court ordered the parties "to meet and confer to determine a method of identifying, returning, and deleting or sequestering all confidential Palantir information within [Joanna]'s possession" to prevent any potential dissemination of that information. Order at 40. No evidence has been adduced showing—nor even suggesting—dissemination of Palantir confidential information to Percepta (or anyone else). *See* Ex. D. Under traditional discovery rules, absent such evidence, Palantir cannot justify its intrusive request to search through third-party company data in an action where all discovery has now been stayed. Its request should therefore be denied.

B.      **Review By Joanna's Counsel Balances Palantir's Needs Against The Intrusiveness Of Its Request.**

Palantir next argues that its counsel ought to be permitted to sift through Joanna's personal data based on its belief that her undersigned counsel will either be unable or unwilling to identify and produce any discovered Palantir confidential information. Palantir's request is incorrect, unusual, and unnecessary.

To begin, Palantir appears to misunderstand what the course of discovery in this case demonstrates. Palantir suggests that the fact that the Court found that "*some* of the information [Joanna] took into her possession is *likely* confidential," Order at 37, somehow "raises legitimate concerns," Mot. at 11, about undersigned counsel's ability to identify Palantir confidential information. This is nonsensical. Though Joanna disputed the confidentiality of certain information found on her devices at the preliminary injunction stage, the only reason that information was before the Court is because *she identified and produced it*. The production of

these materials demonstrates that Joanna and undersigned counsel are certainly capable of and willing to identify Palantir information, even if they disagree about whether it is confidential.[8]

Moreover, Palantir's proposal is out of step with the procedures ordered by courts in similar cases. Courts typically order the party who owns the devices to be imaged to review the device's data for privilege and responsiveness and then produce any responsive materials to the moving party along with a privilege log. *E.g.*, *Genworth Fin. Wealth Mgmt., Inc. v. McMullan*, 267 F.R.D. 443, 449 (D. Conn. 2010). Only where there is evidence that the device-owning party has previously failed to comply with discovery obligations (or where the device-owning party consents) will courts permit the moving party to review the sensitive imaged data itself—as was the case in *all* the cases cited by Palantir. *See Chevron Corp. v. Donziger*, 425 F. Supp. 3d 297, 301–03 (S.D.N.Y. 2019) (explaining that court initially directed defendant to search his own materials, but later ordered plaintiff's review based on defendant's discovery misconduct); *Advante*, 2006 WL 1806151, at *1–2 (concluding that absent "specific, concrete evidence of concealment or destruction of evidence," moving party should not be permitted to "rummage through" opposing party's data).[9] And even where courts are forced to resort to such drastic measures, they acknowledge that imaging protocols must "limit[] [moving] counsel's involvement

---

[8] Palantir also fails to note the first sentence of the Court's findings on this issue: "Cohen may be right that not all the information she sent herself is confidential." Order at 40. This suggests that Palantir may have been overinclusive in identifying its confidential information. But surely Palantir would not conclude that its overinclusion "raises legitimate concerns" about its counsel's ability to identify its confidential information.

[9] *See also, e.g.*, *Philips N. Am. LLC v. Advanced Imaging Servs.*, 2023 WL 316916, at *1–2 (E.D. Cal. Jan. 19, 2023) (moving party had shown "clear, concrete evidence" of device-owning party's concealment of responsive materials); *PlayUp, Inc. v. Mintas*, 350 F.R.D. 47, 54 (D. Nev. 2025) (noting "discrepancies," "failures," "serious questions," and "foot-dragging" in device-owning party's discovery conduct); *HP Tuners, LLC v. Cannata*, 2020 WL 4905533, at *1 (D. Nev. Aug. 20, 2020) (device-owning party consented to imaging protocol).

in th[e] process to the greatest degree possible in light of [the device owning party]'s legitimate privacy interests." *Chevron*, 425 F. Supp. 3d at 303.

There has been no such misconduct here. Joanna has cooperated with Palantir to allay its concerns from the very start of this case when she stipulated to a temporary restraining order. TRO ¶ 1; *see also* Mot. at 11 (noting that Palantir is not criticizing or attacking Joanna's counsel). Thus, there is no reason for this Court to ignore her legitimate privacy interests and permit Palantir's counsel unrestricted access to her personal data.

Again, Joanna has offered a reasonable compromise: using the search terms agreed upon by the parties, her undersigned counsel will review her device and account data and identify and produce any Palantir confidential information found. *Advante*, 2006 WL 1806151, at *1–2 (accepting the same compromise). Beyond its mistrust of undersigned counsel—which is wholly unwarranted—Palantir has offered no justified reason why this proposal is insufficient.

## C.     Palantir's Requested Re-Review Of Prior Images Is Duplicative And Unnecessary.

Palantir further requests that the images created of Joanna's devices during the preliminary injunction phase of this case be ***re-***reviewed to allay its unsubstantiated fears that she previously disseminated its confidential information. But Rule 26 limits such "unreasonably . . . duplicative" discovery efforts. Fed. R. Civ. P. 26(b)(2)(C)(i); *see also Tucker*, 281 F.R.D. at 96 ("[T]he Court will refrain from ordering yet another broad and costly search of Marsh's computer records and policies in search of emails which may not exist."); *cf. Raleigh v. Baribault*, 2024 WL 4524101, at *17–18 (D. Conn. Oct. 18, 2024) (limiting a forensic inspection to new data not previously imaged).

Palantir's request is especially unreasonable because its stated purpose in requesting this duplicative review—i.e., seeking evidence of "potential spoliation," Mot. at 13—is not relevant to

12

its asserted claims for ***forward-looking*** injunctive relief. *See Harty v. Spring Valley Marketplace LLC*, 2017 WL 108062, at *6 (S.D.N.Y. Jan. 9, 2017) ("Because injunctive relief is a forward-looking remedy, courts look beyon[d] the alleged past violation and consider the possibility of future violations."). Joanna is preliminarily enjoined from "using or disclosing any confidential information obtained from Palantir." Order at 40. What matters is whether there is presently any Palantir confidential information on her devices or in her account data that could be used or disclosed by her.[10] Palantir's concerns about any past dissemination or "spoliation"—which there so far has been no evidence to substantiate—are properly addressed in arbitration, not in duplicative review efforts in this now-stayed action.

Because a re-review of the previously created images of Joanna's devices would be unreasonably duplicative and unnecessary to the determination of "identifying, returning, and deleting or sequestering all confidential Palantir information within [Joanna]'s possession," Order at 40, Palantir's request to comb through both the previously imaged ***and*** any newly imaged devices and accounts should be denied. Fed. R. Civ. P. 26(b)(2)(C)(i). The newly imaged devices and accounts will capture what, if anything, is currently in Joanna's possession—nothing more is necessary to ensure against future dissemination.

### D. Palantir Cannot Justify Depriving Joanna Ongoing Access To Her Devices and Accounts.

Finally, without citation to any authority to support its request, Palantir demands that Joanna surrender her devices and access to her accounts for the (unspecified) duration of any imaging and remediation protocol. That demand must be rejected.

---

[10] Joanna is using the same iPhone today that was previously imaged in November of 2025. Thus, the best way to determine whether there is any Palantir confidential information remaining on that device is to re-image it.

Joanna is an engineer who relies on her phone, computer, and digital accounts to do her job—and, more simply, she is a person living in the twenty-first century who requires access to these devices and accounts in her daily life.  Joanna was already voluntarily sidelined from her work at Percepta for months under the stipulated temporary restraining order.  *See* TRO ¶ 1.  Palantir's unsubstantiated concerns regarding post-imaging dissemination cannot justify holding her out even longer.[11]

Again, Palantir has not identified a single instance of Joanna's dissemination of its confidential information in discovery thus far, and an outside vendor has confirmed that it was unable to find any evidence of Joanna disseminating any of the photographs containing Palantir information to anyone at Percepta.  As the undersigned have repeatedly represented, prior searches of Joanna's and Percepta's systems have returned nothing.  *See* Ex. D.  There is no basis to conclude that Joanna could—given her prior production and the subsequent destruction of the Palantir information earlier discovered on her device—or would disseminate Palantir confidential information during the pendency of the forensic review process.  And in any event, Joanna is already enjoined from "using or disclosing any confidential information obtained from Palantir," Order at 40, so she would be under pain of contempt if she were to try, *e.g.*, *Paramed. Electromed. Com., Ltda. v. GE Med. Sys. Info. Techs., Inc.*, 369 F.3d 645, 657 (2d Cir. 2004); 18 U.S.C. § 401.

Because Palantir cannot justify its unprecedented request to deprive Joanna of her devices and accounts during any imaging and remediation protocol, that request should be denied.

---

[11] *GEP Administrative Services, LLC v. Wiseman* does not support a contrary conclusion.  There, the defendant voluntarily agreed not to access her devices or accounts while the forensic inspection was pending.  No. 24-00256, Dkt. 15 at 2 (M.D. Tenn. Mar. 18, 2024) (stipulated preliminary injunction).  Such an arrangement made sense given the defendant's failure to comply with the court's prior orders.  *See* 2024 WL 5454570, at *1–2 (M.D. Tenn. June 11, 2024).  Neither an agreement between the parties nor a history of noncompliance exists here.

## IV.    CONCLUSION

For the foregoing reasons, Palantir's motion should be denied and the Court should enter an order endorsing Joanna's proposed protocol as outlined above.

Dated: May 19, 2026

Respectfully submitted,

**LATHAM & WATKINS LLP**

By: _____

Steven N. Feldman
Sarah Burack
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1200
Facsimile: (212) 751-4864
steve.feldman@lw.com
sarah.burack@lw.com

Marja-Liisa Overbeck (*pro hac vice*)
505 Montgomery Street, Suite 2000
San Francisco, CA 94111-6538
Telephone: (415) 391-0600
Facsimile: (415) 395-8095
mari.overbeck@lw.com

Jordan Hughes (*pro hac vice*)
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004-1304
Telephone: (202) 637-2200
Facsimile: (202) 637-2201
jordan.hughes@lw.com

*Attorneys for Hirsh Jain, Radha Jain,
 and Joanna Cohen*

15

**WORD COUNT CERTIFICATION**

I, Steven N. Feldman, an attorney duly admitted to practice law before this Court, hereby certify that the foregoing opposition memorandum of law complies with the word limit set forth in Local Civil Rule 7.1(c) of the United States District Courts for the Southern and Eastern Districts of New York and Rule 4.C. of Judge Oetken's Individual Rules and Practices in Civil Cases because it contains no more than 4,711 words, excluding the caption, table of contents, table of authorities, signature blocks, and certificates. In preparing this certification, I have relied on the word count of the word-processing system used to prepare this memorandum of law.

Dated: May 19, 2026                                    By: _____
                                                            Steven N. Feldman

16