**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

PALANTIR TECHNOLOGIES INC.,

                Plaintiff,

    v.

HIRSH JAIN, RADHA JAIN, and JOANNA
COHEN

              Defendants.

Civil Action No. 25-cv-08985-JPO

Hon. J. Paul Oetken

**PLAINTIFF PALANTIR TECHNOLOGIES INC.'S**
**REPLY IN SUPPORT OF ITS MOTION FOR**
**AN ORDER ENTERING A FORENSIC INSPECTION AND REMEDIATION PROTOCOL**

**ORAL ARGUMENT REQUESTED**

GIBSON, DUNN & CRUTCHER LLP

200 Park Avenue
New York, NY 10166-0193
Telephone: 212.351.4000
Facsimile: 212.351.4035

Attorneys for Plaintiff

i

**CONTENTS**

Page

INTRODUCTION ............................................................................................................... 1

ARGUMENT ...................................................................................................................... 3

    I.       Forensic Inspection and Remediation Must Include Percepta-Issued Accounts
Accessible on Cohen's Personal Devices ................................................................ 3

    II.      Palantir's Counsel Must Review the Hits to Ensure a Fair and Accurate
Identification of Palantir Confidential Information ................................................ 7

    III.    Search Terms Must Be Applied to the Original Images to Detect Deleted Evidence
of Dissemination .................................................................................................... 9

    IV.    Cohen Must Relinquish Control of Her Devices and Accounts to Prevent Further
Dissemination During the Process .........................................................................11

CONCLUSION ................................................................................................................... 12

**TABLE OF AUTHORITIES**

Page(s)

**Cases**

*GEP Admin. Servs., LLC v. Wiseman*,
   2024 WL 5454570 (M.D. Tenn. June 11, 2024).......................................................................8

*Getachew v. L&S Invs., LLC*,
   2026 WL 412526 (D. Conn. Feb. 13, 2026) ..........................................................................4

*Gilead Sciences, Inc. v. Khaim*,
   755 F. Supp. 3d 285 (E.D.N.Y. 2024) ...................................................................................6

*Goldman, Sachs & Co. v. North Carolina Mun. Power Agency No. One*,
   2013 WL 6409348 (S.D.N.Y. Dec. 9, 2013) ..........................................................................4

*Gross v. Lundski*,
   304 F.R.D. 136 (W.D.N.Y. 2014)............................................................................................4

*Lamb v. Money Transfer Systems, Inc.*,
   2013 WL 5216442 (W.D.N.Y. Sept. 16, 2013) .....................................................................3

*Lebenns v. Frost Productions*,
   2023 WL 8280405 (S.D.N.Y. Nov. 30, 2023).........................................................................5

*OL Priv. Couns., LLC v. Olson*,
   2022 WL 16574308 (D. Utah Nov. 1, 2022) ..........................................................................4

*Springs Mills, Inc. v. Ultracashmere House, Ltd.*,
   724 F.2d 352 (2d Cir. 1983).....................................................................................................4

*Torrey v. Infectious Diseases Soc'y of Am.*,
   334 F.R.D. 79 (E.D. Tex. 2019)...............................................................................................4

*Tucker v. American International Group, Inc.*,
   281 F.R.D. 85 (D. Conn. 2012).................................................................................................5

*Woodberry v. LeBlanc*,
   2026 WL 162254 (M.D. La. Jan. 21, 2026).............................................................................4

**INTRODUCTION**

Palantir initiated this action after discovering that, in the days surrounding her resignation, Cohen systematically accessed and retained confidential Palantir documents and then deleted evidence of that misconduct. Expedited discovery confirmed that Cohen's misconduct was broader than initially apparent: Cohen used her personal iPhone to photograph dozens of confidential Palantir documents displayed on her Palantir laptop screen and retained those photographs while working for Percepta.

Cohen claimed this activity reflected legitimate work-transition efforts, that the materials she retained were not confidential, that she had returned all Palantir property, and that she never shared any Palantir information with Percepta or others. The Court rejected those arguments. In its order preliminary enjoining Cohen from further misuse of Palantir's confidential information, the Court found that Cohen engaged in "surreptitious and anomalous behavior, establishing a likelihood that the information she sent herself or photographed has been used or disclosed or is at risk of being used or disclosed." ECF No. 90 at 36. The Court further rejected Cohen's claim that the documents lacked confidentiality. *Id.* at 37. And although Cohen represented that she had returned all Palantir property and had not disseminated it to Percepta or others, the Court expressly recognized that "***subsequent investigations may reveal that Palantir property exists on additional devices or has in fact been disseminated to Percepta or others***." *Id.* (emphasis added).

The Court's findings bear directly on the present motion concerning the scope of the method to identify, return, and delete or sequester all Palantir confidential information in Cohen's possession. The Court ordered the parties "to determine a method of identifying, returning, and deleting or sequestering all confidential Palantir information within Cohen's possession." *Id.* at 40. This motion therefore concerns implementation of the Court's preliminary injunction—not ordinary merits discovery, as Cohen suggests. And Percepta has resisted efforts to meaningfully verify that

Palantir's confidential information has not spread further. Against this backdrop, Cohen's counterproposal to the forensic inspection and remediation protocol does not adequately implement the remedial process the Court ordered.

Palantir's proposed protocol is narrowly tailored to implement the Court's order and ensure that Cohen cannot inflict further irreparable harm, while protecting her privacy and privilege interests. It is limited to custodial devices and accounts accessible to Cohen, employs negotiated search terms, permits privilege review by Cohen's counsel, and restricts disclosure of non-privileged material to an Attorneys' Eyes Only ("AEO") basis. By contrast, Cohen's counterproposal would omit key repositories of data accessible to Cohen and leave critical aspects of the remediation process dependent on unilateral judgments by Cohen and her counsel, notwithstanding the Court's prior findings regarding Cohen's conduct and the risk of dissemination.

The Court should enter Palantir's proposed protocol for four reasons. *First*, Percepta-issued accounts accessible (and accessed by Cohen) on Cohen's personal devices are within her "possession" and thus fall within the scope of the Court's preliminary injunction. *Second*, Palantir's counsel must be permitted to review all non-privileged Hits[1] to ensure that disputes concerning what constitutes "Palantir confidential information" are not resolved unilaterally by Cohen's counsel. *Third*, the agreed search terms must be applied to the Original Images (in addition to the New Images) because the Original Images may contain deleted evidence reflecting dissemination of Palantir confidential information to additional devices or accounts. *Fourth*, Cohen must relinquish control over the relevant devices and accounts during the remediation process to prevent further dissemination of Palantir confidential information outside the scope of the protocol.

---

[1] All defined terms have the meaning ascribed to them in Palantir's Memorandum of Law In Support of Its Motion for an Order Entering a Forensic Inspection and Remediation Protocol. *See* ECF No. 110 ("Mot.").

2

The Court should adopt this protocol to meaningfully effectuate its preliminary injunction and verify that Palantir's confidential information has been identified, recovered, and sequestered.

## ARGUMENT

### I.    Forensic Inspection and Remediation Must Include Percepta-Issued Accounts Accessible on Cohen's Personal Devices

Percepta-issued accounts accessible on Cohen's personal devices are squarely within the Court's preliminary injunction order. The Court ordered the parties "to determine a method of identifying, returning, and deleting or sequestering all confidential Palantir information ***within Cohen's possession*.**" ECF No. 90 at 40 (emphasis added). Cohen concedes she has "***possession***" of Percepta-issued accounts on her personal devices. *See* ECF No. 114 ("Opp.") at 7; ECF No. 111-4 at 2. That concession is dispositive.

Cohen nevertheless advances three arguments, none of which justifies excluding these accounts from the protocol.

*First*, Cohen argues that even though she has possession of these accounts, "the data belongs to Percepta, and the company has protectable privacy interests" under the federal discovery rules. Opp. at 7.[2] This conflates discovery with injunctive relief. The expedited discovery phase of the case is closed. The Court issued a preliminary injunction based on its finding that Cohen is likely to use and disclose Palantir's confidential information. ECF No. 90 at 36. Palantir seeks entry of a remediation protocol to implement that injunction under Rule 65 and the Court's inherent equitable powers—not additional merits discovery. ECF No. 109. Although privacy and proportionality considerations remain relevant, Cohen's reliance on ordinary discovery principles ignores that Palantir seeks implementation of injunctive relief the Court

---

[2] Cohen also cites to *Lamb v. Money Transfer Systems, Inc.* for the proposition that "materials or products developed by an employee in the course of his or her employment . . . belong to his or her employer." 2013 WL 5216442 at *15 (W.D.N.Y. Sept. 16, 2013). This only proves Palantir's point because its confidential information belongs to Palantir, not to Percepta simply because Cohen disseminated it to Percepta-issued accounts.

*already ordered*—not new merits discovery. *Goldman, Sachs & Co. v. North Carolina Mun. Power Agency No. One*, 2013 WL 6409348, at *4 (S.D.N.Y. Dec. 9, 2013) ("Absent the clearest command to the contrary from Congress, federal courts retain their equitable power to issue injunctions in suits over which they have [personal] jurisdiction"); *Springs Mills, Inc. v. Ultracashmere House, Ltd.*, 724 F.2d 352, 355 (2d Cir. 1983) (affirming courts "wide range of discretion in framing an injunction in terms it deems reasonable to prevent wrongful conduct").

But even under ordinary discovery principles, employees are deemed to possess work accounts they can access and use. *See, e.g.*, *Getachew v. L&S Invs., LLC*, 2026 WL 412526, at *6-7 (D. Conn. Feb. 13, 2026) (requiring employee to produce documents from work account); *Gross v. Lundski*, 304 F.R.D. 136, 144 (W.D.N.Y. 2014) (same); *Torrey v. Infectious Diseases Soc'y of Am.*, 334 F.R.D. 79, 85-86 (E.D. Tex. 2019) (same); *Woodberry v. LeBlanc*, 2026 WL 162254, at *10 (M.D. La. Jan. 21, 2026) (same); *OL Priv. Couns., LLC v. Olson*, 2022 WL 16574308, at *3 (D. Utah Nov. 1, 2022) (same).[3]

*Second*, Cohen argues that Palantir's request is unnecessary because Percepta and Cohen have purportedly searched for Palantir confidential information and found none. *See* Opp. at 8.[4] These purported "searches" provide no reliable basis to foreclose forensic inspection and remediation. Percepta has **never** described what it actually did—its repeated assurances of

---

[3] Cohen argues that *Getachew* and *OL Private* are distinguishable because there, the non-requesting party used their work emails for reasons "related to th[e] dispute" and because the requesting party was not seeking "non-parties' business data." Opp. at 8 n.7. These purported distinctions fail. Cohen uses her Percepta-issued accounts, including email, Slack, and Signal, in connection with her work for Percepta—Cohen Tr. at 217:15-218:13—raising reasonable concerns about the dissemination of Palantir confidential information to these accounts. And Palantir is not seeking Percepta's "business data," but rather, its own confidential information.

[4] Cohen's position concerning the relevance of these prior "searches" has shifted throughout the meet-and-confer process. She first claimed that the forensic inspection and remediation process should account for these earlier "searches." ECF No. 111-3 at 14-15. She later asserted that these earlier "searches" were irrelevant. ECF No. 111-4 at 2. She has now reversed yet again, relying on the earlier purported "searches" as a basis to oppose further remediation. *See* Opp. at 8.

"exhaustive searches" are unaccompanied by a single concrete detail.  ECF No. 111-1 at 2.  When

Palantir flagged this evasiveness for the Court, Mot. at 2-3, Percepta still refused to elaborate,

responding with the same conclusory statement that it "searched its internal systems . . . and found

no Palantir information."  Opp. at 8.  An unverifiable and vague "search" cannot foreclose forensic

inspection and remediation.

As for Cohen's "search," it was equally deficient.  It omitted entire categories of critical

data repositories that Cohen admits she accesses on her phone—third-party applications, encrypted

applications, enterprise-managed applications (such as Outlook or Slack run on General Catalyst

and/or Percepta mobile device management), and other accounts (even non-enterprise-managed

applications), such as Slack, WhatsApp, Signal, and Outlook.  Declaration of Anna Wendt ¶ 4.  It

focused only on photographs of Palantir confidential *documents* while ignoring all other Palantir

confidential information potentially in Cohen's possession.  *Id.* ¶ 5.  And the search for

photographs was limited to original filenames, hash values, and metadata—a methodology that

would miss any copies or derivatives with altered metadata.  *Id.* ¶ 6.  A reliable forensic inspection

requires collection from these repositories, application of OCR technology, and deployment of

appropriately broad search terms.  *Id.* ¶ 7.  Cohen's vendor performed none of these steps,

rendering its results incomplete and unreliable.  *Id.* ¶ 8.[5]

In other words, the very situation that Palantir is concerned about, and which this Court's

order seeks to address – whether Cohen disseminated Palantir information to Percepta via Slack,

Outlook, WhatsApp, or Signal – remains unaddressed by Cohen's previous search.

---

[5] Cohen relies on *Tucker v. American International Group, Inc.*, 281 F.R.D. 85 (D. Conn. 2012) and *Lebenns v. Frost Productions*, 2023 WL 8280405 (S.D.N.Y. Nov. 30, 2023) to argue that prior purported "searches" foreclose further forensic remediation.  But both cases involved ordinary discovery disputes in which the responding party had already undertaken substantial review efforts.  This case instead concerns implementation of injunctive relief the Court has already ordered, and the prior purported "searches" here lacked the breadth and forensic rigor contemplated by Palantir's proposed protocol.

5

*Third*, Cohen speculates that Palantir's request is overly broad because it might "expose[] Percepta's proprietary business information" and is supposedly based on Palantir's "unsubstantiated belief" that Cohen disseminated Palantir confidential information to Percepta. Opp. at 8-9. This concern is illusory. Under Palantir's proposed protocol, the parties will meet-and-confer concerning the search terms applied to data stored in the Percepta-issued accounts accessible on Cohen's personal devices, allowing Cohen to address any she believes are inappropriate or too broad. Mot. at 6-7.[6] And the non-privileged Hits will be shared with Palantir on an AEO basis. Mot. at 7. Palantir does not seek unrestricted access to Percepta systems generally; the protocol is limited to Cohen's custodial accounts accessible through her devices and subject to negotiated search terms, privilege review, and AEO protections. Percepta's proprietary business information is fully protected.

Palantir's request is also not based on an "unsubstantiated belief" that Cohen disseminated Palantir confidential information to Percepta, Opp. at 8-9, but rather, a reasonable suspicion given Cohen's past misconduct. The Court ruled that Cohen engaged in "surreptitious and anomalous behavior, establishing a likelihood that the information she sent herself or photographed has been used or disclosed or is at risk of being used or disclosed." ECF No. 90 at 36. The Court rejected Cohen's testimony that she had returned all Palantir property and never disseminated it to Percepta or others, inviting Palantir to engage in "subsequent investigations" to explore such dissemination. *Id.* There is nothing "unsubstantiated" about engaging in precisely the sort of "subsequent investigations" the Court deemed necessary.

---

[6] This process bears no resemblance to the request in *Gilead Sciences, Inc. v. Khaim*, 755 F. Supp. 3d 285, 297 (E.D.N.Y. 2024), in which the court questioned how broad "geolocation data on Mr. Khaim's mundane, daily tasks and social engagements—which might potentially include Mr. Khaim's personal medical or psychiatric appointments, as well as his religious practices, care for family members, and grocery shopping—would further Gilead's pursuit of its trademark claims." *Id.* at 297. Palantir instead seeks a targeted forensic remediation protocol limited to custodial devices and accounts accessible to Cohen, governed by negotiated search terms, privilege review, and AEO protections.

Finally, Cohen suggests the parties meet-and-confer about Percepta-issued accounts only if the inspection of her personal devices and accounts reveal dissemination. *See* Opp. at 9-10. This proposed sequencing would create a substantial risk that dissemination evidence remains undiscovered. Cohen has already demonstrated she will delete evidence of dissemination. On the day she resigned, she sent herself Palantir confidential documents through Slack, downloaded them to her personal iPhone, and then deleted them from her Palantir laptop. ECF No. 90 at 36. If she similarly deleted evidence of dissemination to Percepta from her personal devices, her proposal would permanently conceal it. Palantir should not be forced to absorb this risk given the Court's findings regarding Cohen's retention and deletion of Palantir information. Further, Cohen's own vendor found evidence that Cohen intentionally disseminated Palantir information, indicating that she likely possesses additional Palantir information she may disseminate. ECF No. 115 ¶ 6. Finally, it is unclear how evidence of dissemination would be found on Cohen's phone and Cohen posits no forensic method of determining dissemination by use of just iPhone data. Dissemination is revealed from accounts which sent and received the information—the very accounts Palantir's proposal addresses.

## II. Palantir's Counsel Must Review the Hits to Ensure a Fair and Accurate Identification of Palantir Confidential Information

Palantir's counsel must review all non-privileged Hits to ensure that any disagreements as to what constitutes "Palantir confidential information" are not left to the sole discretion of Cohen's counsel. The parties dispute what constitutes "Palantir confidential information," and the Court has already rejected Cohen's unduly narrow definition. ECF No. 69 ¶ 22; ECF No. 90 at 37. Although Palantir does not doubt the integrity of Cohen's counsel, this disagreement creates legitimate concerns about whether Cohen's narrow and already-rejected definition of "Palantir confidential information" will be applied within the inspection and remediation process.

Cohen argues that because she and her counsel identified and produced the photographs of Palantir confidential documents pursuant to the stipulated temporary restraining order ("TRO"), they should be exclusively responsible for identifying Palantir confidential information as part of the forensic inspection and remediation protocol. *See* Opp. at 10-11. But Cohen overlooks the distinction between the stipulated TRO and the preliminary injunction order.

Under the stipulated TRO, Cohen was required to "return to Palantir all items containing or embodying ***Palantir Property***." ECF No. 22 ¶ 1 (emphasis added). The order defined "Palantir Property" as broader than just "confidential information," encompassing "any documents or information: (1) created by [Cohen] or other former Palantir employees, contractors, or consultants in relation to their work for Palantir; or (2) obtained in [Cohen's] course of employment with Palantir." *Id*. As a result, neither Cohen nor her counsel was required to distinguish between confidential and non-confidential Palantir information. The preliminary injunction order, by contrast, requires precisely that determination, as the Court ordered the parties "to determine a method of identifying, returning, and deleting or sequestering all ***confidential Palantir information***." ECF No. 90 at 40 (emphasis added). Cohen's and her counsel's prior ability to return "Palantir Property" therefore does not establish that they can unilaterally determine what constitutes confidential Palantir information for purposes of the remediation process.

The concern is not bad faith by Cohen's counsel. The problem is structural: the Hits are likely to contain technical AI-related materials, and Cohen's counsel does not represent Palantir and lacks the context necessary to evaluate what constitutes confidential Palantir information. If errors occur—even inadvertently—Palantir will have no way to detect them. At least one court has recognized exactly this problem. *See GEP Admin. Servs., LLC v. Wiseman*, 2024 WL 5454570, at \*5 (M.D. Tenn. June 11, 2024) (holding that it is "unreasonable to allow a one-sided review

8

process when Defendant has previously submitted to Plaintiff an inadequate forensic examination of her own"). That concern is particularly acute here given the Court's findings regarding Cohen's retention, deletion, and potential dissemination of Palantir confidential information.

Cohen also argues that oversight is unwarranted because she has not concealed or destroyed evidence. *See* Opp. at 11–12. But Cohen transferred Palantir documents from her laptop to her personal iPhone and then deleted those documents from her laptop. ECF 90 at 36. She now claims she can no longer locate those documents. ECF No. 69 ¶ 21. This conduct underscores the need for meaningful forensic oversight and demonstrates why Palantir cannot rely exclusively on unilateral review by Cohen and her counsel. In any event, courts do not require definitive proof of destruction or concealment before permitting the requesting party's counsel to participate in a review process designed to implement injunctive relief.

Cohen's privacy concerns are already addressed. Her counsel may review all Hits for privilege before any disclosure, and non-privileged Hits will be shared only on an AEO basis. Mot. at 7. Those protections adequately safeguard Cohen's legitimate privacy interests while ensuring that disputes concerning what constitutes confidential Palantir information are not resolved unilaterally by Cohen and her counsel.

## III.  Search Terms Must Be Applied to the Original Images to Detect Deleted Evidence of Dissemination

The agreed search terms must be applied to the Original Images, in addition to the New Images, because the Original Images may contain deleted evidence of dissemination of Palantir confidential information to additional devices or accounts. Applying the search terms to the Original Images will allow Palantir to identify deleted confidential information and use associated metadata to determine where that information was transmitted, stored, or disseminated. Restricting the search to the New Images, by contrast, would risk leaving dissemination pathways permanently

undiscovered.  For example, if Cohen transmitted Palantir confidential information to Percepta or others and then deleted that evidence from her personal devices, the Original Images may be the only remaining source of recoverable evidence concerning that dissemination.  Without that recovery, Palantir cannot determine the full scope of dissemination or effectively remediate it.  Applying search terms only to the New Images—as Cohen proposes—would risk foreclosing that recovery.

Cohen argues that applying the search terms to the Original Images would be "unreasonably duplicative" because prior searches already covered those images. Opp. at 12.  This ignores that the prior purported "searches" were conducted using methodologies and criteria unilaterally selected by Cohen and Percepta, rather than the negotiated forensic process contemplated by Palantir's proposed protocol.  Palantir's protocol requires the parties to meet-and-confer on search terms that are more comprehensive and forensically reliable than what Cohen and Percepta used.  Mot. at 6-7.  The prior purported searches therefore cannot foreclose review of the Original Images under the parties' negotiated remediation protocol.

Cohen also argues that identifying prior dissemination is not "forward-looking" injunctive relief.  *See* Opp. at 13.  This misses the point.  Palantir does not seek review of the Original Images for historical purposes divorced from remediation.  Identifying the devices and accounts to which Cohen disseminated Palantir confidential information is a prerequisite to ensuring that information is returned or destroyed.  Without knowing where it went, effective remediation is impossible.  Ensuring that disseminated Palantir confidential information is identified, recovered, and sequestered from additional devices and accounts is quintessential forward-looking relief.

10

## IV.     Cohen Must Relinquish Control of Her Devices and Accounts to Prevent Further Dissemination During the Process

If Cohen retains control of the relevant devices and accounts during the forensic inspection and remediation process, Palantir confidential information could be transmitted to additional devices and accounts outside the scope of the protocol after the New Images are created, without any reliable mechanism for detecting that dissemination.  The temporary relinquishment of control during the remediation process is therefore necessary to preserve the integrity of the Court-ordered protocol and eliminate the risk of further dissemination while the process is underway.

Cohen argues that temporarily relinquishing control of her devices and accounts would be unduly burdensome and would effectively extend her "garden leave" at Percepta.  *See* Opp. at 14. But Palantir's proposal does not prevent Cohen from working or communicating through newly purchased or established devices or accounts during the remediation process.  Nor does Cohen explain why temporary restrictions limited to the relevant custodial devices and accounts would be unmanageable given the narrow and time-limited nature of the proposed protocol.

Cohen also relies on her and Percepta's prior purported "searches" as evidence that no dissemination has occurred.  But the Court already declined to credit Cohen's representations that she had fully returned Palantir property and had not disseminated it to Percepta or others.  *See* ECF No. 90 at 36.  The Court instead found that Cohen engaged in "surreptitious and anomalous behavior" and that "subsequent investigations may reveal that Palantir property exists on additional devices or has in fact been disseminated to Percepta or others." *Id.* at 36-37.  Palantir is therefore entitled to a remediation protocol that meaningfully prevents further dissemination of its confidential information during the remediation process itself.

11

## CONCLUSION

For all these reasons, Palantir respectfully requests that the Court order Cohen to participate in Palantir's proposed forensic inspection and remediation protocol.

Dated: May 29, 2026                                  **GIBSON, DUNN & CRUTCHER LLP**

By: */s/ Harris M. Mufson*

Harris M. Mufson
Ilissa Samplin
Justin M. DiGennaro
Zachary A. Schreiber

GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166-0193
Telephone: 212-351-4000
hmufson@gibsondunn.com
jdigennaro@gibsondunn.com
zschreiber@gibsondunn.com

GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: 213-229-7000
isamplin@gibsondunn.com

*Attorneys for Palantir Technologies Inc.*

**WORD COUNT CERTIFICATION**

I, Harris M. Mufson, an attorney duly admitted to practice law before this Court, hereby certify that this memorandum of law complies with the word limit set forth in the Local Rule 7.1(c) because it contains no more than 3,499 words, excluding the parts of the motion exempted from the word limit by Local Civil Rule 7.1. In preparing this certification, I have relied on the word count of the word-processing system used to prepare this memorandum of law.

Dated: May 29, 2026                                        By: _/s/ Harris M. Mufson_

                                                                   Harris M. Mufson

13